IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIFFANY AARON AND EBONI HORN-WATSON, | § § § | |
| INDIVIDUALLY AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED, | § § § § | |
| | § | CIVIL ACTION NO. 13-cv-1716 |
| *Plaintiffs* | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| JASON LEDAY, LTHM HOUSTON - OPERATIONS, LLC, AND KIGLAPAIT HOSPITAL CORPORATION d/b/a RENAISSANCE HOSPITAL GROVES | § § § § § § | |
| *Defendants.* | | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**

Plaintiffs Tiffany Aaron and Eboni Horn-Watson, individually and on behalf of all persons similarly situated ("Plaintiffs") file this Response to Defendants' Rule 12(b)(6) Motion to Dismiss (Docket #11), and respectfully show the Court as follows:

**I.  NATURE AND STAGE OF THE PROCEEDINGS**

Plaintiffs filed its First Amended Class Action Complaint (Docket #10) on July 16, 2013 after agreeing to give Defendants an extension on its answer due date. Defendants have still not filed an answer, but they did file a Rule 12(b)(6) Motion to Dismiss on August 12, 2013, alleging Plaintiffs failed to state a claim.

Plaintiffs' Amended Complaint alleges the following six causes of action against all three Defendants: 1) violation of the WARN Act; 2) violation of section 502(a)(1)(B) of ERISA; 3)

violation of section 502(a)(2) of ERISA; 4) violation of section 502(c)(1) of ERISA; 5) breach of contract; and 6) violation of the Fair Labor Standards Act.

Defendants' Motion to Dismiss seeks to dismiss Jason LeDay ("LeDay") and LTHM Houston – Operations, LLC ("LTHM") entirely from the lawsuit, as well as all three ERISA claims. Although Defendants' motion does not seek to dismiss the claims for the WARN Act violation, breach of contract, and FLSA violation against defendant Kiglapait Hospital Corporation d/b/a Renaissance Hospital Groves ("Kiglapait"), Kiglapait has failed to file an answer or any affirmative defenses.

## II. FACTUAL BACKGROUND

Plaintiffs' Amended Complaint made the following factual allegations:

- LeDay is the sole manager and member of LTHM;
- **LeDay is and/or was the administrator of Kiglapait;**
- **LeDay has operational control over LTHM and/or Kiglapait;**
- Defendants own, operate, and/or have control over at least two other hospitals – St. Anthony's Hospital in Houston, Texas and South Hampton Community Hospital in Dallas, Texas;
- **Plaintiffs were employed by Defendants (all three Defendants);**
- LeDay initially indicated that the hospital where Plaintiffs worked was temporarily shut down to reorganize, deal with internal construction, and for purposes of changing its focus to behavioral health and senior care;
- Defendants initially indicated it had plans to reopen the hospital, but that has not occurred;
- Plaintiffs were provided with medical and other health benefits;
- After their termination, Plaintiffs were not provided with a COBRA election notice;
- Plaintiffs' health coverage was actually terminated without the option to participate via COBRA and, therefore, they are no longer covered under Defendants' health care plan;
- Defendants have two other hospitals currently in operation with several employees, and a few employees are still working at Renaissance Hospital Groves. Therefore, it is improper to deny COBRA coverage to Plaintiffs and other terminated employees;

- Defendants' employee handbook states that "[e]mployees who are laid off or terminated for cause will receive accrued PTO."

Defendants have not refuted any of these allegations. In fact, Defendants did not provide any evidence whatsoever in support of their Motion to Dismiss. The above facts must be taken as true.

In addition, Plaintiffs identify the following facts of which Defendants should already be aware and which merely elaborate on the above allegations:

<u>LeDay's personal involvement</u>

LeDay has personally testified under oath (via an affidavit on June 5, 2012, attached as *Exhibit A*) as to the following: 1) he purchased LTHM on June 10, 2011, which included the purchase of the operations of St. Anthony's Hospital (St. Anthony's Hospital is the d/b/a of LTHM); 2) he created a limited partnership to hold the partnership interests of St. Anthony's Hospital, and a separate general partner of that limited partnership "which is solely owned and managed by [him]"; 3) in June 2011, he moved to Houston to serve as the CEO of St. Anthony's Hospital; and 4) he refers to the workers at St. Anthony's Hospital as "my employees."

<u>Employee Handbook</u>

An employee handbook (relevant portions attached as *Exhibit B*) was provided to Plaintiffs and other workers at Kiglapait. This handbook, which was referenced in the Amended Complaint, identifies LTHM (or St. Anthony's Hospital) as the responsible party, not Kiglapait. The employee handbook states that "[n]o manager, supervisor or representative other than the Chief Executive Officer has the authority to enter into any agreement guaranteeing you employment for any specific period of time or to make any written or oral promises, agreements or commitments contrary to this policy." As noted above, LeDay was the Chief Executive Officer. The handbook also discussed pay, benefits, PTO, and related issues.

Plaintiffs' correspondence with LTHM

On May 1, 2013 (just a few days after the terminations), Cathy McCue, Human Resources Director of St. Anthony's Hospital, sent an email to named Plaintiff Tiffany Aaron stating "At a minimum, we will put PTO on your check to cover the hours you would have worked so that you at least have a full check. Depending on what we know next week about the timeframe and scope of the reopening, we might put all your PTO on. I will know better as things progress, but I don't expect to know until mid next week." *Exhibit C*. (emphasis added). Ms. McCue's email address has a domain of stanthonyshouston.com. Therefore, the human resources representative of Defendant LTHM (of which LeDay is CEO) is directly handling the wage and pay decisions of a former Kiglapait/Renaissance Hospital Groves worker. Similarly, on May 6, 2013, McCue sent an email to named Plaintiff Eboni Horn-Watson indicating they were still "working on" sending out the last check (a payment that has still not been sent). *Exhibit D*.

As additional examples, on May 3, 2013, McCue sent an email to potential class member Stephanie Reynolds addressing her 401k rollover request. *Exhibit E*. The previous year, on December 7, 2012 and while still employed, Reynolds exchanged emails with David Mak, the Chief Financial Officer of St. Anthony's Hospital regarding PTO requests for the holiday, seeking approval for employees to take time off over the holidays. *Exhibit F*.

On May 22, 2013, potential class member Stacey Blanchette communicated via email with a Mary Bell regarding her last paycheck. *Exhibit G*. Ms. Bell's exact statement to Ms. Blanchette in this email was "Stacey since the last checks that were cut were manual checks I do not have a copy of the actual check stub – this would have been attached to your final check[.] I have attached your earnings report for this year. It does have all the information for your last check PPE 4/20/13 paid on 5/1/2013. It also has your YTD totals[.]" Ms. Bell's email address has a domain of lthmllc.com

4

(which links to St. Anthony's Hospital). Notably, this email suggests that no payment is being made for the April 21 – 26, 2013 time period (thus supporting the blatant FLSA violation).

Therefore, various representatives of St. Anthony's Hospital were directly handling wage and pay related issues of former Kiglapait/Renaissance Hospital Groves workers, and the CFO was approving PTO decisions. All of these emails suggest that Kiglapait is a sham corporation (or not really Plaintiffs' employer) and that actual control lies with LTHM and/or LeDay.

Texas Workforce Commission Wage Determination

Recently, on July 25, 2013 (after the filing of the Amended Complaint), the Texas Workforce Commission ("TWC") held in favor of the Plaintiffs and potential class members with respect to their wage claims. *Exhibit H*.

All of the above facts are known to Defendants. Furthermore, **all of the above facts merely support the previously asserted allegations in Plaintiffs' Amended Complaint that all Defendants employed Plaintiffs and that LeDay and/or LTHM have operational control over Kiglapait, continue to operate other hospitals, and continue to employ/control other employees**. Nevertheless, it is likely that more relevant evidence may come out during the discovery process.

### III.  ARGUMENTS AND AUTHORITIES

Plaintiffs do not dispute the *Twombly* and *Iqbal* standard referenced in Defendants' Motion. *Defendants' Motion, p. 3*. However, Plaintiffs contend that they have alleged enough facts to state a claim to relief that is plausible on its face.

Defendants Fail to Provide Any Facts or Evidence in Support of their Motion

Plaintiffs alleged that LeDay and/or LTHM are their employers. Defendants have not provided evidence as to how/why they are not their employers. Instead they make the sweeping and

5

odd generalization that only the location at which they worked is equivalent to their employer. *Defendants' Motion, p. 5*. There is no basis in law or fact for such a contention. Therefore, Plaintiffs' allegations regarding LeDay and LTHM must be taken as true, which provides sufficient notice. If disputed by Defendants, this is ultimately a fact issue to be decided by the Court. *See, e.g., Moore v. Int'l Filing Co., LLC*, 2010 U.S. Dist. LEXIS 82495, *7 (S.D. Miss. 2010) (stating, in a decision to grant class certification, that "[t]he Court will be required to address whether Defendant was contractually obligated to pay PTO after the closing [and] whether Defendant met the definition of an 'employer' under the WARN Act…"). *Exhibit I*.

Defendants argue that Plaintiffs are only relying on an alter ego theory in order to hold LeDay and/or LTHM liable for all causes of action.[1] Plaintiffs are not pleading alter ego as a separate cause of action. *See Western Oil and Gas JV, Inc. v. Griffiths*, 91 Fed. App'x 901, 903-04 (5th Cir. 2003) ("[A]lter ego… is an equitable remedy and not a cause of action."). In order to pierce the corporate veil, a plaintiff must prove "(1) the parent and subsidiary operated as a single economic entity; and (2) an overall element of injustice or unfairness is present." *ASARCO LLC v. Americas Mining Corporation*, 396 B.R. 278, 317 (S.D. Tex. 2008). The above facts, including the facts in the Amended Complaint, show that LeDay had operational control over the other two defendants and show an element of injustice or unfairness. Specifically, several workers were abruptly terminated, denied continuing medical benefits, not paid their final wages, denied their accrued PTO, and even recently had a favorable TWC wage determination order – yet they are still without any appropriate compensation or relief. It appears that Kiglapait was a sham structure and that LTHM and/or LeDay were in control of the Plaintiffs' employment situation, compensation, and benefits. This allegation is further supported by the fact that the Defendant Kiglapait has not

---

[1] That is not entirely true. Plaintiffs have alleged that LeDay and/or LTHM are liable as employers (or joint employers). In the alternative, they are liable under the alter ego theory as well.

yet filed an answer, but is also not seeking to absolve itself entirely of the claims against it in the Defendants' Motion to Dismiss. Therefore, in the alternative to employer status, the alter ego theory will be used to support liability against LTHM and/or LeDay, and enough facts have been pleaded to provide sufficient notice to Defendants. Nevertheless, each Defendant may be held directly liable based on each claim, separate from alter ego. These will be addressed below.

ERISA Claims

Defendants seek to dismiss all three ERISA claims. *Defendants Motion, pp. 5 – 8*.

### 29 U.S.C. § 1132(a)(1)(B)

Defendants first argue that the claim under 29 U.S.C. § 1132(a)(1)(B) is not sufficient because Plaintiffs have not identified what "past benefits" are owed nor how their benefits were "improperly terminated" even though they ceased to be employed. This section of ERISA allows individuals to recover past benefits owed, enforce their rights, and clarify their future rights to health insurance benefits. Plaintiffs sufficiently pled facts to support a cause of action under this provision. *See Docket #10, ¶¶ 28 – 34*. Plaintiffs are not receiving medical benefits as they did when they were employed, and they did not receive COBRA notifications. Relief under § 1132(a)(1)(B) may require Defendants to pay for incurred medical expenses ("past benefits owed") and reinstate their medical coverage and/or offer COBRA coverage ("enforce their rights" and/or "clarify their future rights").

### 29 U.S.C. § 1132(a)(2)

Regarding the 29 U.S.C. § 1132(a)(2) claim all three Defendants are considered to be fiduciaries as defined by 29 U.S.C. § 1002(21)(A). Based on the available evidence (which is limited considering nearly all potential evidence in this case is in the possession of Defendants), either one of two events have occurred: 1) Defendants are continuing the health plan for their other employees but still not allowed Plaintiffs to participate (which is likely, considering the LTHM

employee handbook provided to Plaintiffs discusses the benefits (*see Exhibit B*)); or 2) the health plan that specifically covered Plaintiffs has been terminated. Plaintiffs have no personal knowledge as to who made which decision or why; however, the allegations are well pleaded in the Amended Complaint to put the Defendants on notice. Although a decision to terminate a health plan may ordinarily not suggest a breach of a fiduciary duty, the allegation here is that because other employees of Defendants are still covered by a health plan (even if potentially a different health plan than that covered Plaintiffs), then Plaintiffs and the other terminated employees must also be permitted to participate in such health plan. Therefore, the termination of an ERISA plan (that should not have been terminated because Defendants/Employers continue to provide medical benefits to their other employees) amounts to a breach of a fiduciary duty.[2] **Plaintiffs' goal of reviving the plan is for the benefit of the plan itself.** If Defendants have not terminated the health plan that covered Plaintiffs, then it can accordingly make such a representation and Plaintiffs can consequently withdraw this claim.

*29 U.S.C. § 1132(c)(1)*

Under COBRA, an employer must notify the administrator of a group health plan of a qualifying event within thirty days of that event's occurrence. 29 U.S.C. § 1166(a)(2). Within fourteen days after that, the administrator then must inform the covered employee of the qualifying event. *Id.* § 1166(a)(4). Therefore, when an employer is also a plan administrator, the employer must provide notice within forty-four days of the qualifying event. 29 C.F.R. § 2590 – 606.4. If the

---

[2] Defendants do state in a footnote that "the benefits plan in place for employees of [Kiglapait] has been completely terminated." *Defendants' Motion, pp. 5-6, n. 15*. If that is indeed the case, the representations soon after the terminations that the hospital may be reopened and the emails regarding the compensation of employees gives rise to an ERISA estoppel claim. *See Mello v. Sara Lee Corp.*, 431 F.3d 440, 444 (5th Cir. 2005) ("We now join other circuits in explicitly adopting ERISA-estoppel as a cognizable theory."). Had the Plaintiffs and other workers known the moment they were terminated that they would not be entitled to COBRA, they could have begun to search for benefits elsewhere and/or handled their medical care differently. It is highly likely that Plaintiffs will need to seek another amendment of the complaint; however, some initial discovery is needed.

employer so fails, ERISA allows for a statutory penalty of $100 per day. 29 U.S.C. § 1132(c)(1). This has actually been increased to up to $110 per day. 29 C.F.R. § 2575.502c-1.

COBRA benefits must be provided unless an employer "ceases to provide any group health plan to any employee." 29 U.S.C. § 1162(2)(B). Plaintiffs alleged that other employees still work for and obtain medical coverage from Defendants, who are all employers of Plaintiffs. Defendants have not provided evidence to dismiss this claim at this stage in the proceedings.

As an initial matter, courts have found employers to be liable under an 1132(c)(1) claim. *See, e.g., Otero Carrasquillo v. Pharmacia*, 382 F. Supp. 2d 300, 312 (D. P.R. 2005); *Krauss v. Oxford Health Plans, Inc.*, 418 F. Supp. 2d 416, 434 (S.D.N.Y. 2005) Nevertheless, there is no evidence that any Defendant/employer notified an administrator of the qualifying event (Plaintiffs' termination) within thirty days. *See* § 1166(a)(2). Furthermore, Plaintiffs' allegations indicate that Defendants, as the employers, are also the plan administrators. "When a plan fails to designate an administrator, the plan sponsor is the administrator. The term plan sponsor means employer. 29 U.S.C. § 1002(16)(B)(i)." *In re Charter Graphic Servs. v. Colotone, Inc.*, 230 B.R. 759, 774 (N.D. Tex. 1998). Although the allegation is clear in the Amended Complaint, Plaintiffs should be entitled to conduct discovery into this issue. Indeed, the Defendants are in the best position to notify Plaintiffs and the Court as to who the plan administrator is, if any. It has not done so, and Plaintiffs do not know. Therefore, the only assumption at this time is that either the plan administrator is an employer or the employer failed to designate an administrator. Of course, if it turns out that is not the case and there is a separate plan administrator, Plaintiffs will seek to appropriately amend its complaint by joining the plan administrator as an additional party. Nevertheless, the alter ego theory could still hold Defendants liable for the failure to send COBRA notifications even if a separate plan administrator exists.

WARN Act Claim

Plaintiffs' Amended Complaint sufficiently explained the WARN Act violations. *Plaintiffs' Amended Complaint, ¶¶ 20 – 27.* Defendants have not explained why these specific allegations are insufficient nor provided any evidence to dispute them. Furthermore, LTHM and/or LeDay can be liable as an employer for WARN Act violations. *See Administaff Cos., Inc. v. N.Y. Joint Board, Shire & Leisurewear Div.*, 337 F.3d 454, 457-58 (5th Cir. 2003) (applying the Department of Labor standards to determine whether an entity may be liable for WARN Act violations). Specifically, the DOL standard states:

> independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as a part of the parent or contracting company depending upon the degree of their independence from the parent. Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.

29 C.F.R. 639.3(a)(2). These are purely legal issues that are not necessary to plead in the Amended Complaint; however, the facts already alleged provide sufficient notice to Defendants.

Breach of Contract Claim

With respect to the breach of contract claim for unpaid PTO, the employee handbook does not identify Kiglapait, but instead LTHM. Although there may be a fact question as to which entity or entities are ultimately be liable for the contract claim, because LTHM is the defendant that was actually identified in the employee handbook, an alter ego theory is not necessary to hold LTHM liable.

FLSA Claim

Finally, Defendants appear to ignore Plaintiffs' FLSA claim which alleged that they (and all other potential class members) were not paid for the last week of their employment. This is now

10

supported by the recent TWC wage determination.[3] The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer." 29 U.S.C. § 203(d). "The FLSA recognizes the possibility of multiple employers." *Artis v. Asberry*, 2012 U.S. Dist. LEXIS 149410, *11 – 12, c.a. no. G-10-323 (S.D. Tex. Oct. 16, 2012) (citing 29 C.F.R. 791.2(a)). *Exhibit J*. "[A] corporation's status as employer does not preclude a corporate officer's simultaneous status as employer…." *Fontenot v. Brouillette*, 2013 U.S. Dist. LEXIS 5703, *16-17, c.a. no. 4:10-cv-01053 (S.D. Tex. Jan. 15, 2013). *Exhibit K*. "'[T]hose who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies.'" *Id*. at *17 (citing *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012)). Again, Plaintiffs' allegations in the Amended Complaint regarding LTHM's and LeDay's control over the employment/pay situation, as well as the reference to the employee handbook, are sufficient to include all Defendants as the "employer" as defined by the FLSA.

## IV. Prayer

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss. In the alternative, Plaintiffs request that the Court permit them to amend their complaint so as to include additional facts referenced above as deemed necessary by the Court. Plaintiffs also request all other relief to which they may be justly entitled.

Respectfully submitted,

---

[3] At this time it is not known if Defendants have appealed any of the TWC findings.

Dated: August 14, 2013								SUD LAW P.C.

										*/s/ Nitin Sud*
										Nitin Sud
										State Bar No. 24051399
										Federal ID No. 611307
										4545 Mount Vernon Street
										Houston, TX 77006
										Phone: 832-623-6420
										Fax: 832-304-2552

										Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that Plaintiffs' Response to Defendants Rule 12(b)(6) Motion to Dismiss was served on the following attorney in accordance with the Federal Rules of Civil Procedure on August 14, 2013:

C. Christian Frederiksen, Jr.
Hallett & Perrin, P.C.
1445 Ross Avenue
Suite 2400
Dallas, Texas 75202
cfrederiksen@hallettperrin.com

					*/s/ Nitin Sud*
					Nitin Sud