UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIFFANY AARON and | § | |
| EBONI HORN-WATSON, | § | |
| | § | |
| Individually and on Behalf of All | § | |
| Persons Similarly Situated | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civ. Action No. 4:13-cv-01716 |
| VS. | § | |
| | § | |
| JASON LEDAY, LTHM HOUSTON- | § | |
| OPERATIONS, LLC, and KIGLAPAIT | § | |
| HOSPITAL CORPORATION d/b/a/ | § | |
| RENAISSANCE HOSPITAL GROVES | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM & ORDER</u>

This case arises out of the employment and termination of Plaintiffs Tiffany Aaron and Eboni Horn-Watson (together "Plaintiffs") by Renaissance Hospital Groves ("Renaissance" or "Renaissance Hospital"). Plaintiffs have brought suit against Renaissance, Jason LeDay and LTHM Houston-Operations, LLC ("LTHM"). Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim. (Doc. No. 11.) After considering the Motion, all responses and replies, and the applicable law, the Court concludes that the Motion should be **GRANTED IN PART** and **DENIED IN PART.**

I.     **BACKGROUND**[1]

Plaintiffs worked at Renaissance in Groves, Texas.[2]  (Doc. No. 10 ¶¶ 3-4, 17.) Renaissance was a "d/b/a" name for Kiglapait Hospital Corporation.  (*Id.* ¶ 7.)  On April 26,

---

[1] For the purposes of the Motion to Dismiss, the Court takes Plaintiffs' factual allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

2013, Plaintiffs and most of their colleagues at Renaissance Hospital "were abruptly and involuntarily terminated, without any warning, and the hospital was shut down." (*Id.* ¶ 18.) Three employees, however, continue to work at Renaissance Hospital. (*Id.* ¶ 19.)

Plaintiffs received no warning prior to April 26 that they would be terminated or that the facility would shut down. (*Id.* ¶ 24.) At first, LeDay "indicated that the hospital was temporarily shut down to reorganize, deal with internal construction, and for purposes of changing its focus to behavioral health and senior care." (*Id.* ¶ 25.) Plaintiffs aver that now, however, "the shut-down appears to be permanent." (*Id.*)

While employed at Renaissance Hospital, Plaintiffs received "medical and other health benefits." (*Id.* ¶ 28.) Plaintiffs explain that they and many of their colleagues "heavily depended on these benefits." (*Id.* ¶ 29.) But, upon termination, Plaintiffs and their fellow former employees had their health coverage terminated. (*Id.* ¶ 33.) Plaintiffs aver that, upon their termination, "they became entitled to benefits under the Consolidated Omnibus Budget Reconciliation Act ("COBRA")." (*Id.* ¶ 30.) They allege that Defendants "were obligated to send a COBRA election notice to [former employees] within 44 days of their termination." (*Id.* ¶ 31.) But, those former employees have still not received such notification. (*Id.*)

Plaintiffs also received Paid Time Off (PTO) benefits during the course of their employment. (*Id.* ¶ 35.) An employee handbook, which Plaintiffs attribute to "Defendants," stated that "[e]mployees who are laid off or terminated for cause will receive accrued PTO." (*Id.*) Plaintiffs have not, however, received such payments. (*Id.* ¶ 36.) Likewise, Plaintiffs were not compensated for the days they worked between April 21 and April 26. (*Id.* ¶ 39.)

---

[2] Plaintiffs allege that they "were employed by Defendants." (Doc. No. 10 ¶ 17.) Indeed, in several places, they attribute actions and statuses to "Defendants" generally, without further identification. (*See also, e.g., id.* ¶¶ 15-16.) But, as is discussed in greater depth below, specifics as to which Defendant did what are critical to this lawsuit.

Defendant Jason LeDay served as the "sole manager and member of LTHM Houston-Operations, LLC." (*Id.* ¶ 10.)  He also had "operational control" over that entity.  (*Id.* ¶ 12.)  Additionally, he was the administrator of Renaissance Hospital Groves, of which he also had operational control.  (*Id.* ¶¶ 11-12.)  Some combination of LeDay, LTHM, and Kiglapait "own and/or operate Renaissance Hospital Groves."  (*Id.* ¶ 15.)  They also "own, operate, and/or have control over at least two other hospitals."  (*Id.* ¶ 16.)

Plaintiffs have alleged violations of the Worker Adjustment and Retraining Notification (WARN) Act, the Employee Retirement Income Security Act (ERISA), and the Fair Labor Standards Act (FLSA), as well as breach of contract.  (Doc. No. 10 at 1.)  With respect to ERISA, Plaintiffs allege violations of 29 U.S.C. § 1132(a)(1)(B), § 1132(a)(2) and § 1132(c)(1).  (Doc. No. 10 at 8.)  Plaintiffs intend to seek class certification pursuant to Federal Rule of Civil Procedure 23.  (*Id.* ¶ 47.)

Defendants LTHM and LeDay now move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims.  (Doc. No. 11.)  All Defendants move to dismiss each of the ERISA claims.  (*Id.*)

## II.    LEGAL STANDARD

A court may dismiss a complaint for a "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief — including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "is not akin to a 'probability requirement,'" though it does require more than simply a "sheer possibility" that a defendant has acted unlawfully. *Id.* at 678.  Thus, a pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

## III.   ANALYSIS

### A.  ERISA Claims

#### 1.  29 U.S.C. § 1132(a)(1)(B)

"ERISA provides 'a panoply of remedial devices' for participants and beneficiaries of benefit plans." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989) (quoting *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146 (1985)).  ERISA Section 502(a) provides that "[a] civil action may be brought (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  "This provision is relatively straightforward.  If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 210 (2004). Worthy of emphasis is the phrase "terms of the plan."  Any right to benefits derives not from the statute, but from the plan. *See, e.g.*, *Firestone Tire & Rubber Co.*, 489 U.S. at 113 ("ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans .

. . and to protect contractually defined benefits." (internal quotation marks and citations omitted)); *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 394 (5th Cir. 1998) ("When a plan has denied benefits to a claimant, § 1132 of ERISA provides that the claimant may bring a suit in federal district court 'to recover benefits due to him under the terms of his plan.'" (quoting 29 U.S.C. § 1132(a)(1)(B))).

Defendants argue that the claims under Section 1132(a)(1)(B) should be dismissed because Plaintiffs have not specified "what specific 'past benefits' are allegedly owed or to whom." (Doc. No. 11 at 5.) Defendants also argue that Plaintiffs have not pleaded "specifics as to how their benefits were 'improperly terminated' even though they did cease to be employed." Plaintiffs counter that they "are not receiving medical benefits as they did when they were employed, and they did not receive COBRA notifications." (Doc. No. 12 at 7.) They add that "[r]elief under § 1132(a)(1)(B) may require Defendants to pay for incurred medical expenses . . . and reinstate their medical coverage and/or offer COBRA coverage." (*Id.*)

Defendants are correct that Plaintiffs have not identified any specific "past benefits" due to them. Plaintiffs' argument (made only in their brief) that Defendants may be obligated "to pay for incurred medical expenses" is unavailing because Plaintiffs have not pleaded the existence of any incurred medical expenses. (Doc. No. 12 at 7.) Still, the Court does not feel as though it can dismiss Plaintiffs' claim. Section 1132(a)(1)(B) also allows for a plaintiff "to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Plaintiffs assert that, upon termination, the plan entitled them to COBRA benefits.[3] (Doc. No. 10 ¶ 30.) Defendants have offered no reason why this is insufficient to state

---

[3] COBRA provides that "[t]he plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161(a); *see also Degruise v. Sprint Corp.*, 279 F.3d 333, 336 (5th Cir. 2002) (explaining operation of statute).

a claim to enforce rights under the plan or to clarify Plaintiffs' rights to future benefits.[4]  *Cf.*

*Hospitals, Inc. v. Health Plus of Louisiana, Inc.*, 418 F.3d 436, 441 (5th Cir. 2005) ("'ERISA, as

amended by COBRA, is remedial legislation which should be liberally construed to effectuate

Congressional intent to protect employee participants in employee benefit plans.'" (quoting

*McGee v. Funderburg,* 17 F.3d 1122, 1124 (8th Cir. 1994)).  It is plausible that Plaintiffs' claim

to continuing COBRA benefits entitles them to relief under § 1132(a)(1)(B).  This claim can

move forward.[5]

     *2.  29 U.S.C. § 1132(a)(2)*

     ERISA Section 409(a) establishes "Liability for Breach of Fiduciary Duty."   It

establishes in pertinent part that

> Any person who is a fiduciary with respect to a plan who breaches any of the
> responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter
> shall be personally liable to make good to such plan any losses to the plan
> resulting from each such breach, and to restore to such plan any profits of such
> fiduciary which have been made through use of assets of the plan by the fiduciary,
> and shall be subject to such other equitable or remedial relief as the court may
> deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).  ERISA Section 502, codified at 29 U.S.C. § 1132, permits a suit "by the

Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109

of this title."  *Id.* § 1132(a)(2).  According to the Supreme Court, "[a] fair contextual reading of

---

[4] Most claims brought under this section of ERISA ask the Court to review an earlier determination, made by the plan administrator, denying coverage to the beneficiary.  *See,* e.g. *Firestone Tire & Rubber Co.*, 489 U.S. at 109 (1989) ("ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations.  To fill this gap, federal courts have adopted the arbitrary and capricious standard . . ."); *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 520-21 (5th Cir. 2000) ("ERISA provides federal courts with jurisdiction to review benefit determinations by fiduciaries or plan administrators."); *Sanborn-Alder v. Cigna Grp. Ins.*, 771 F. Supp. 2d 713, 717 (S.D. Tex. 2011) ("The Fifth Circuit applies a two-step analysis to review discretionary determinations by an ERISA plan administrator: (1) the court decides whether the determination was legally correct, and if so, there is no abuse of discretion; and (2) if it was legally incorrect, whether the administrator's interpretation was an abuse of discretion." (citation omitted)).  Here, in contrast, there is no specific denial alleged in the record — no formal request for specific coverage that was denied — but only the outright termination of a plan.  (*See* Doc. No. 10 at ¶¶28-34.)  Still, that this case is different from most others brought under this Section is not, without more, an independent basis to dismiss it.
[5] As far as determining the proper defendant(s), Defendants have challenged only whether this claim can properly be brought against LeDay and LTHM.  Those arguments are addressed below.

the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Massachusetts Mut. Life Ins. Co.*, 473 U.S. at 142. Consequently, the Court held that "Congress did not intend that section to authorize any relief except for the plan itself." *Id.* at 144; *see also Total Plan Servs., Inc. v. Texas Retailers Ass'n*, 932 F.2d 357, 358 (5th Cir. 1991) ("Because Total Plan is seeking to recover its own payments, rather than losses incurred by the plan itself, the district court properly dismissed this claim as one outside the scope of an ERISA action."); *Constantine v. Am. Airlines Pension Benefit Plan*, 162 F. Supp. 2d 552, 556 (N.D. Tex. 2001) ("Furthermore, the Court agrees with Defendants that a claim under § 1132(a)(2) must be premised upon harm to the entire Plan, rather than harm to a particular individual.").

Thus, it is proper for courts to dismiss § 1132(a)(2) claims where "[a]ny reference to recovery on behalf of the Plan is absent from . . . Plaintiff's Complaint." *Constantine*, 162 F. Supp. 2d at 557. That appears to be the case here. Plaintiffs do not plead any injury whatsoever to the plan itself. In their Response to Defendants' Motion to Dismiss, Plaintiffs argue that "[a]lthough a decision to terminate a health plan may ordinarily not suggest a breach of fiduciary duty, the allegation here is that because other employees of Defendants are still covered by a health plan . . . Plaintiffs and the other terminated employees must also be permitted to participate in such health plan." (Doc. No. 12 at 8.) That explanation does not offer any insight into how *the plan* has been harmed. Perhaps mindful of the *Constantine* court's observation that "[a]ny reference to recovery on behalf of the Plan" was also "absent from . . . Plaintiff's Opposition Brief," 162 F. Supp. 2d at 557, Plaintiffs have asserted in their responsive brief that "Plaintiffs' goal of reviving the plan is for the benefit of the plan itself," (Doc. No. 12 at 8). That

statement is simply too conclusory to be helpful.  "A close examination of [Plaintiffs'] claim does not disclose how it involved the requisite 'loss to the plan.'"  *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir. 1995).  The claim is therefore dismissed.

### 3. *29 U.S.C. § 1132(c)(1)*

Title 29 U.S.C. § 1166(a)(2) requires that employers notify ERISA plan administrators within thirty days of certain qualifying events of that event's occurrence.  Section 1163(2) expressly makes an employee's termination one such qualifying event.  Section 1166(a)(4), in turn, dictates that, within fourteen days of the employer notifying the administrator, the administrator must provide notice to the plan beneficiary.  And where the plan administrator fails to properly provide a beneficiary with notice, that administrator can be held personally liable to the tune of $110 per day.  *Id.* § 1132(c)(1); 29 C.F.R. § 2575.502c–1.  Plaintiffs contend that they received no such notice here.  (Doc. No. 10 ¶ 31-32.)  Defendants, on the other hand, argue that Plaintiffs have not pleaded that any of the Defendants served as the administrator for Plaintiffs' plan.  (Doc. No. 11 at 8.)

The Court must agree with Defendants.  Nowhere in Plaintiffs' complaint do they allege that any of the four Defendants served as plan administrator.  While Plaintiffs rightly note that, where the plan fails to identify an administrator, the plan sponsor — i.e., employer — is deemed to be the plan administrator, *see* Doc. No. 12 at 9; 29 U.S.C. §1002(16)(A)(ii), Plaintiffs have not alleged that the relevant plan failed to designate an administrator.

Plaintiffs argue that "courts have found employers to be liable under an 1132(c)(1) claim" (Doc. No. 12 at 9), but the cases they cite are not sufficient to overcome the fundamental deficiency in Plaintiffs' complaint.  In *Krauss v. Oxford Health Plans, Inc.*, 418 F. Supp. 2d 416, 434 (S.D.N.Y. 2005) *aff'd,* 517 F.3d 614 (2d Cir. 2008), the relevant plan had not designated an

administrator.  Thus, under the statutory provisions outlined above, it was clear that the employer was to be considered the administrator.  The same was deemed to be true in *In re Charter Graphic Servs., Inc.*, 230 B.R. 759, 774 (Bankr. N.D. Tex. 1998), where "a comprehensive written plan d[id] not exist."  *Id.*  And in the third case cited by Plaintiffs, there simply was not sufficient analysis regarding the administrator's identity for the court's opinion to be persuasive here.  *See Otero Carrasquillo v. Pharmacia*, 382 F. Supp. 2d 300, 312 (D.P.R. 2005) *aff'd sub nom. Otero Carrasquillo v. Pharmacia Corp.*, 466 F.3d 13 (1st Cir. 2006).  Plaintiff has cited no case — not even one that predates *Twombly* and *Iqbal* — in which a plaintiff defeated a Rule 12(b)(6) motion to dismiss despite not having plead any facts at all regarding the plan administrator's identity.

Plaintiffs alternately argue that "the Defendants are in the best position to notify Plaintiffs and the Court as to who the plan administrator is, if any.  It has not done so, and Plaintiffs do not know."  (Doc. No. 12 at 9.)  That statement may well be true, but it ignores the realities of civil litigation in the federal courts.  Even where plaintiffs have unquestionably been wronged, they cannot overcome a motion to dismiss by simply making an "assumption" as to who the proper defendant should be.  (*See id.*)  That is true even where plaintiff earnestly pledges "to appropriately amend its complaint by joining the plan administrator as an additional party" in the event that "it turns out that . . . there is a separate plan administrator."  (*Id.*)  Although the Court believes the law on this issue is in need of revision, Plaintiffs' claim under §1132(c)(1) must be dismissed.

**B.  Claims against LeDay and LTHM**

Defendants argue that all claims brought against LeDay and LTHM should be dismissed on the grounds that they "blur[] . . . the lines, both between corporations and between corporations and their attenuated owners."  (Doc. No. 11 at 4.)

Defendants argue that "[t]he closest Plaintiffs come in their First Amended Complaint to a purported explanation as to why LeDay and LTHM Houston could even possibly be proper defendants in this case is their claim that 'LeDay is the alter ego of LTHM Houston – Operations, LLC and/or Kiglapait Hospital Corporation.'"  (*Id.* (citing Doc. No. 10 ¶ 14).) Defendants dismiss that assertion, however, as "a conclusion unsupported by the pleading of any specific facts."  (*Id.*)  Rather, they argue that "[i]f Plaintiffs wish to hold LeDay and/or LTHM Houston liable for unpaid wages, paid time-off benefits, WARN violations, or any other obligations purportedly owed to them by their 'employer,' they need to plead specific facts from which the Court could reasonably conclude that LeDay and/or LTHM Houston could possibly be their employer and therefore owe such obligations to Plaintiffs."  (*Id.* at 5.)

Plaintiffs contend that they "have alleged that LeDay and/or LTHM are liable as employers (or joint employers)," or that "[i]n the alternative, they are liable under the alter ego theory as well."  (Doc. 12 at 6 n.1.)  The Court addresses in turn LeDay's and LTHM's liability with respect to each substantive claim.

### 1.  Breach of Contract

"Under Texas law, the elements of a claim for breach of contract are '(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach.'"  *NuVasive, Inc. v. Renaissance Surgical Ctr. N., L.P.*, 853 F. Supp. 2d 654, 660 (S.D. Tex. 2012) (Ellison, J.)

(quoting *B & W Supply, Inc. v. Beckman,* 305 S.W.3d 10, 16 (Tex. App.-Houston [1st Dist.] 2009)).   Plaintiffs argue in effect that, as evidenced by Defendants' employee handbook, a contract existed, under which Defendants were obligated to pay terminated employees for accrued paid-time-off.   (Doc. No. 10 ¶ 35.)

Because Defendants have not sought to dismiss it, the Court offers no opinion on whether Plaintiffs' breach of contract claim against Kiglapait is supported by sufficient factual allegations.   (*See* Doc. No. 11 at 2.)   Defendants have sought dismissal of the breach of contract claims only against LeDay and LTHM Houston.   But the factual basis for any contract claim is relatively meager, and that affects the claims against LeDay and LTHM.   The Court has no choice but to dismiss them.   The Court can infer neither that LeDay nor LTHM are liable as employers, nor that they are liable as alter egos of Kiglapait.   First, with respect to the former, the question is not so much whether LeDay and LTHM conform to a specific definition of employer, as it is for some of the statutory claims, but rather whether LeDay and LTHM entered into a contract with Plaintiffs.   Plaintiffs have not pleaded anything from which the Court could draw such an inference.   Second, with respect to the alter ego claim, the Texas Business Corporations Act dictates that, in contract cases, the corporate veil may only "be pierced where the defendant shareholder 'caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder.'"   *Rimade Ltd. v. Hubbard Enterprises, Inc.*, 388 F.3d 138, 143 (5th Cir. 2004) (quoting Tex. Bus. Corp. Act art. 2.21(A)(2)).[6]   Ignoring, for the time being, whether or not this requirement triggers Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, the

---

[6] The Texas Business Corporation Act article 2.21 has been re-codified at Tex. Bus. Orgs. Code § 21.223.   The statutory rule governing veil piercing in contract cases was enacted in response to the state supreme court's decision in *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex. 1986).   "The amendments overruled *Castleberry* to the extent that a failure to observe corporate formalities is no longer a factor in proving the alter ego theory in contract claims." *Western Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 68 (5th Cir. 1994).

Court sees nothing in the Complaint from which it could, under any standard, infer *actual* fraud on the part of Defendants.  The breach of contract claims against LeDay and LTHM Houston are therefore dismissed.

   *2.   WARN Act*

   "Under the WARN Act, an employer must provide 60-days' written notice of a 'mass layoff.'" *Brewer v. Am. Power Source, Inc.*, 291 F. App'x 656, 659 (5th Cir. 2008) (quoting 29 U.S.C. § 2102(a)).   The Act defines "mass layoff" as "an employment loss at the single site of employment . . . for at least 33 percent of the employees." 29 U.S.C. § 2101(a)(3).  And, the Act makes "[a]ny employer who orders a plant closing or mass layoff in violation of section 2102 . . . liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff." *Id.* § 2104(a)(1).

   Plaintiffs correctly acknowledge that the Department of Labor has promulgated regulations that seek to shed light on whether "independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as a part of the parent or contracting company." 20 C.F.R. § 639.3(a)(2).  The overriding concern in answering that question is the "degree of [a subsidiary's] independence from the parent." *Id.* "Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations." *Id.*[7] Thanks to the Third Circuit's exhaustive analysis of whether courts should rely upon these factors in

---

[7] "The Department of Labor's 'supplementary information' regarding its WARN Act regulations explains that: 'The intent of the regulatory provision relating to independent contractors and subsidiaries is not to create a special definition of these terms for WARN purposes; the definition is intended only to summarize existing law that has developed under State Corporations laws and such statutes as the NLRA, the [FLSA] and [ERISA]. The Department does not believe that there is any reason to attempt to create new law in this area especially for WARN purposes when relevant concepts of State and federal law adequately cover the issue.'" *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 483 (3d Cir. 2001) (quoting 54 Fed. Reg. 16,045 (Apr. 20, 1989)).

"determining when two corporations compose a single entity," *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 483 (3d Cir. 2001), courts have largely coalesced around that view that they should, *see id.* at 489; *Administaff Companies, Inc. v. New York Joint Bd., Shirt & Leisurewear Div.*, 337 F.3d 454, 457 (5th Cir. 2003).

But it is first necessary to separate LeDay and LTHM.  It makes no sense to apply the aforementioned DOL regulations, which speak of "common ownership" and "common directors," to a natural person.  Individuals, of course, are not owned and do not have directors. If Plaintiffs are to hold LeDay liable, it will have to be on a more traditional veil-piercing theory.

With respect to LTHM, Plaintiffs contend that any inquiries into the DOL factors "are purely legal issues that do not necessarily have to be pleaded in the Amended Complaint."  (Doc. No. 12 at 10.)  The Court cannot agree.  To survive this motion, Plaintiffs must have pleaded sufficient facts from which the Court can infer that Plaintiffs will ultimately show that LTHM satisfies the DOL standard.  Other courts have recognized as much.  *See, e.g.*, *In re AFA Inv., Inc.*, 12-11127 MFW, 2012 WL 6544945, at *3-5 (Bankr. D. Del. Dec. 14, 2012); *In Re Consol. Bedding, Inc.*, 432 B.R. 115, 117 (Bankr. D. Del. 2010); *Guippone v. BH S & B Holdings LLC*, 09 CIV.1029 (CM), 2010 WL 2077189, at *4-7 (S.D.N.Y. May 18, 2010).  "In the context of the fact-specific inquiry into whether a company can be held responsible under WARN for the act of a related company, no one factor set out by the DOL is controlling, and all factors need not be present for liability to attach."  *Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136, 142 (S.D.N.Y. 2004).

Plaintiffs have alleged that LeDay was the sole manager of LTHM Houston, that he was the administrator of Renaissance Hospital Groves, and that he had operational control over at least one of LTHM and Renaissance Hospital.  (Doc. No. 10 ¶¶ 10-14.)  They also allege that, in

the wake of the shutdown, LeDay "initially indicated that the hospital was temporarily shut down to reorganize, deal with internal construction, and for purposes of changing its focus to behavior health and senior care."  (Doc. No. 10 ¶ 25.)  From these averments, the Court can infer that Plaintiffs will satisfy the first DOL factor and perhaps even the second.  Given the allegations that LeDay had operational control over LTHM "and/or" Renaissance Hospital (Doc. No. 10 ¶ 12), it may even be possible to infer that the two entities had personnel policies emanating from a common source — LeDay — though that allegation is so conclusory that the Court has a hard time placing much weight upon it.

But there are no facts pleaded that would suggest that LTHM exercised *de facto* control over Kiglapait or that the operations of Kiglapait were dependent on LTHM.  For instance, Plaintiff has "not alleged that defendants shared administrative or purchasing services, shared employees or office equipment, or commingled finances."  *Guippone*, 2010 WL 2077189, at *6.  Nor has Plaintiff offered any factual allegations that LTHM "controlled or even participated in the day-to-day personnel policies or daily labor operations of" Kiglapait or Renaissance.  *Vogt*, 318 F. Supp. 2d at 143.  As at least two courts have held, "'the mere fact that the subsidiary's chain-of-command ultimately results in the top officers of the subsidiary reporting to the parent corporation does not establish the kind of day-to-day control necessary to establish an interrelation of operations.'"  *Id.* (quoting *Pearson*, 247 F.3d at 501).  Without more to go on, the Court cannot allow Plaintiffs' WARN claim against LTHM to proceed.

With respect to LeDay, Plaintiffs have not articulated a viable theory upon which to hold him liable.  The only real option in cases such as this one, where Plaintiffs wish to hold a (presumed) corporate officer liable for the corporation's wrongdoing, is to pierce the corporate veil.  To determine whether that is appropriate here, the Court must first determine what forum's

veil piercing law applies.  The Fifth Circuit has instructed this Court to do so by "apply[ing] federal common law choice-of-law principles when [it] exercise[s] federal question jurisdiction over a case."  *Jimenez v. Sun Life Assur. Co. of Canada*, 486 F. App'x 398, 406 (5th Cir. 2012) *cert. denied,* 133 S. Ct. 1282 (2013).  Where "the federal statute in question demands national uniformity, federal common law provides the determinative rules of decision."  *Bhd. of Locomotive Engineers v. Springfield Terminal Ry. Co.*, 210 F.3d 18, 25-26 (1st Cir. 2000) (citing *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 642 (1981); *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 728 (1979)).  Because Congress passed the WARN Act in response to a problem felt nationwide — "numerous plant closings and mergers in the 1970s and 1980s," *Pearson*, 247 F.3d at 482 — and in furtherance of a clearly articulated national policy,[8] and because there is already a uniform standard for when parent companies can be held accountable for the WARN Act violations of their subsidiaries, the Court is inclined to apply federal common law veil piercing rules to the claims against LeDay.

One case, however, gives this Court pause.  In *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379 (5th Cir. 2000), the Fifth Circuit was, as this Court is here, called upon to answer whether the corporate veil could be pierced in a WARN Act case.  *Id.* at 385.  The Court of Appeals applied Louisiana law, though it did so without any choice of law analysis or comment on why it had not opted for the federal standard.  *Id.*  That would suggest the Fifth Circuit may have decided that state law is to govern veil piercing in WARN Act cases.

Ultimately, though, the Court does not feel as though it has to reach a firm decision as to which veil piercing principles apply, because Plaintiffs' Amended Complaint is devoid of factual

---

[8] *Pearson*, 247 F.3d at 482 ("The Act was intended to protect workers by requiring that companies with advance knowledge of an imminent closing provide notice to employees, so as to allow 'workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market.'" (quoting 20 C.F.R. § 639.1(a)).

allegations that would support piercing the veil under any standard.  If Texas law is to be

applied, "Texas courts are reluctant to pierce the corporate veil and expand liability except in

'compelling circumstances.'"  *Acceptance Indem. Ins. Co. v. Maltez*, CIV. A. H-04-2222, 2007

WL 2908433, at *6 (S.D. Tex. Oct. 3, 2007) (quoting *Robbins v. Robbins,* 727 S.W.2d 743, 746

(Tex. App.-Eastland 1987, ref. n.r.e.)).  In the influential case of *Castleberry v. Branscum,* 721

S.W.2d 270 (Tex.1986)), the Texas Supreme Court set forth when it might be appropriate to do

so:

> (1) when the fiction is used as a means of perpetrating fraud;
> (2) where a corporation is organized and operated as a mere tool or business
>     conduit of  another corporation;
> (3) where the corporate fiction is resorted to as a means of evading an existing
>     legal obligation;
> (4) where the corporate fiction is employed to achieve or perpetrate monopoly;
> (5) where the corporate fiction is used to circumvent a statute; and
> (6) where the corporate fiction is relied upon as a protection of crime or to justify
>     wrong.

*Id.* at 272 (citations and footnotes omitted); *see also Western Horizontal Drilling, Inc. v. Jonnet*

*Energy Corp.*, 11 F.3d 65, 67 (5th Cir. 1994) ("The Fifth Circuit has "interpreted [*Castleberry*]

as establishing three broad categories in which a court may pierce a corporate veil: (1) the

corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for

illegal purposes; and (3) the corporation is used as a sham to perpetrate a fraud.").  While those

factors still apply to tort actions, *Castleberry*'s holding has been abrogated by statute with

respect to contract claims; mere ignorance of corporate formalities will not do.  *Western*

*Horizontal Drilling*, 11 F.3d at 68.  Rather, a showing of actual fraud is necessary before a court

will pierce the corporate veil.  *See* Bus. Corp. Act art. 2.21, *re-codified at* Tex. Bus. Orgs. Code

§ 21.223.  But regardless of whether it were to treat the WARN Act claim more like a tort claim

or a contract claim,[9] the Court does not see facts in Plaintiffs' complaint that could support a finding of *any* of *Castleberry*'s prerequisites.

Alternately, courts construing federal common law have generally agreed upon a two-part test for determining when to pierce the corporate veil:

> (i) was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations."

*N.L.R.B. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1052 (10th Cir. 1993); *see also Minnesota Laborers Health & Welfare Fund v. Scanlan*, 360 F.3d 925, 928 (8th Cir. 2004); *InterGen N.V. v. Grina*, 344 F.3d 134, 148-49 (1st Cir. 2003); *N.L.R.B. v. W. Dixie Enterprises, Inc.*, 190 F.3d 1191, 1194 (11th Cir. 1999); *Bufco Corp. v. N.L.R.B.*, 147 F.3d 964, 969 (D.C. Cir. 1998); *Thomas v. Peacock*, 39 F.3d 493, 504 (4th Cir. 1994) *rev'd on other grounds,* 516 U.S. 349 (1996).  Once again, Plaintiffs have not pleaded any facts from which the Court could infer that either prong of this test would be satisfied.  The Court therefore dismisses the WARN Act claims against LeDay.[10]

### 3.  FLSA

The FLSA imposes certain strict requirements upon "employers."  29 U.S.C. § 201 *et seq*; *Gray v. Powers*, 673 F.3d 352, 354-55 (5th Cir. 2012).  Thus, the relevant question here is whether LeDay and/or LTHM can be considered "employers" so as to come within the ambit of the statute.  Per that statute, "employer" "includes any person acting directly or indirectly in the

---

[9] The Fifth Circuit has encountered precisely that question but has left it open.  *See Hollowell*, 217 F.3d at 386 ("In [*Staudt v. Glastron, Inc.*, 92 F.3d 312, 316 (5th Cir. 1996)] we did not need to decide definitively whether WARN was most like a contract or tort action, and we need not do so now either.").

[10] Another reason that the Court is hesitant to firmly resolve any choice-of-law issues is that the parties have offered only the most minimal briefing of these issues.  Should the same issues arise in a future motion, the Court would benefit from more extensive briefing.

interest of an employer." 29 U.S.C. § 203(d). "An entity's status as an employer for the purpose of the FLSA turns on the 'economic reality' of the working relationship." *Artis v. Asberry*, CIV.A. G-10-323, 2012 WL 5031196, at *3 (S.D. Tex. Oct. 16, 2012) (quoting *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33 (1961)). "The Fifth Circuit has held that the FLSA's definition of 'employer' is 'sufficiently broad to encompass an individual who, though lacking a possessory interest in the employer corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees.'" *Itzep v. Target Corp.*, 543 F. Supp. 2d 646, 652 (W.D. Tex. 2008) (quoting *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 329 (5th Cir.1993)).

An employee can also have multiple "employers" for the sake of the FLSA. As another court in this circuit has explained:

> The Department of Labor regulations state that a joint employment relationship exists when there is an arrangement between employers to share an employee's services; one employer is acting directly or indirectly in the interest of the other employer or employers in relation to the employee; the employers are associated with one another, directly or indirectly, with respect to the employment of the employee because one employer controls, is controlled by, or is under common control with the other employer.

*Itzep v. Target Corp.*, 543 F. Supp. 2d 646, 652 (W.D. Tex. 2008) (citing 29 C.F.R. § 791.2(b)).

Where an employee claims multiple employment, "the Fifth Circuit has also applied a five-factor test, which considers 'the total employment situation." *Artis*, 2012 WL 5031196, at *4 (citing *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669-70 (5th Cir. 1968)). Those five factors are:

> (1) Whether or not the employment takes place on the premises of the company?; (2) How much control does the company exert over the employees?; (3) Does the company have the power to fire, hire, or modify the employment condition of the employees?; (4) Do the employees perform a 'specialty job' within the production line?; and (5) May the employee refuse to work for the company or work for others?

*Id.* (quoting *Wirtz*, 405 F.2d at 669-70); *see also Gray*, 673 F.3d at 355 (applying a substantially similar four-part test). "No one factor is determinative of whether a defendant is an 'employer' under the FLSA." *Id.* (quoting *Iztep,* 543 F.Supp.2d at 653).

This standard is unambiguously less rigorous than that for piercing the corporate veil. And, this Court agrees, in large part anyway, with the other district courts that have held that "[t]he economic reality test is a factual inquiry that does not bear on the sufficiency of pleadings." *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 475-76 (S.D.N.Y. 2011) (quoting *Augustine v. AXA Fin., Inc.*, 07 CIV. 8362, 2008 WL 5025017, at *3 (S.D.N.Y. Nov. 24, 2008)). That is, the Court cannot ignore the economic reality test, but that test need not *yet* be satisfied for the claims to move forward.  The Court need only find it to be plausible that Plaintiffs will eventually show that LeDay and LTHM satisfy the standard.  And yet, even with all of that in mind, the Court finds itself forced to grant the motion to dismiss.  All that Plaintiffs have pleaded is that LeDay controlled Kiglapait and LTHM, that he was the administrator of Renaissance Hospital, and that he was the one who spoke to the employees following the hospital shutdown. Plaintiffs have offered nothing regarding whether LeDay and/or LTHM "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Gray*, 673 F.3d at 355.[11]

In most instances in which district courts have found that a plaintiff adequately pleaded joint employment, the plaintiff had pleaded far more than Plaintiffs offer here.  *See Flemming v. REM Connecticut Cmty. Servs. Inc.*, 3:11CV689 JBA, 2012 WL 6681862, at *5 (D. Conn. Dec. 21, 2012) ("Defendants administered her employee benefits . . . were responsible for her

---

[11] That LeDay was the "administrator" of the hospital is the closest Plaintiffs come to making an allegation that rises to plausibility.  But they make this claim in so conclusory a fashion, without offering *anything* more as to his role in the organization, that the Court cannot credit it.

workers' compensation benefits . . . and Defendant Holdings was identified as her employer on a claim form from the Connecticut Workers' Compensation Commission." (citations omitted)); *Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1381 (S.D. Fla. 2012) ("Here, Ceant has alleged that each of the individual Defendants are owners and operators of Aventura Limousine and that each of them regularly exercised authority to hire and fire employees, determine employee work schedules, and control the finances and operations of the company."); *Baltzley v. Berkley Grp., Inc.*, 10-61194-CIV-ALTONAG, 2010 WL 3505104, at \*3 (S.D. Fla. Sept. 3, 2010) ("While the allegations lack creativity and are repetitive, they do present a plausible claim—each Individual Defendant is an FLSA employer—supported by factual assertions: each of the Individual Defendants regularly performed acts of hiring and firing, setting work schedules, and controlling operations and finances of the various Corporate Defendants.").  In contrast, at least one district court dismissed a claim despite plaintiffs having pleaded *far more* than what Plaintiffs here have averred.  *See Lepkowski v. Telatron Mktg. Grp., Inc.*, 766 F. Supp. 2d 572, 575-76, 583 (W.D. Pa. 2011).

Plaintiffs argue that their "allegations in the Amended Complaint regarding LTHM's and LeDay's control over the employment/pay situation, as well as the reference to the employee handbook, are sufficient to include all Defendants as the 'employer' as defined by the FLSA." (Doc. No. 12 at 11.)  The Court is not clear on what exactly Plaintiffs mean by "control over the employment/pay situation."   And with respect to the handbook, the Court intends to keep its focus on the pleadings, rather than Plaintiffs' purported evidence, in ruling on this motion to dismiss.  *See* 10A Wright & Miller, Fed. Prac. & Proc. Civ. § 2713 (3d ed.) (noting that a "motion under Rule 12(b)(6) . . . only entails an examination of the sufficiency of the

pleadings").[12]  If Plaintiffs are in possession of probative evidence the Court encourages them to use it to bolster their pleadings, not append it to their briefs.

### 4.  ERISA

As discussed in Section III.A above, only Plaintiffs' claim under 29 U.S.C. § 1132(a)(1)(B) can proceed against any Defendant.  As far as whether they can proceed against LeDay and LTHM, that requires the Court to determine who a proper defendant is for a § 1132(a)(2) claim.  The Fifth Circuit has held that "'[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan' and that '[i]f an entity or person other than the named plan administrator takes on the responsibilities of the administrator, that entity may also be liable for benefits.'" *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 845 (5th Cir. 2013) (quoting *Gomez–Gonzalez v. Rural Opportunities, Inc.,* 626 F.3d 654, 665 (1st Cir. 2010)).  Based on the Amended Complaint, it seems plausible that LeDay or LTHM may have assumed the responsibilities of the plan administrator.  Of course, it is not likely that *both* assumed those responsibilities, so *at least* one will likely be dismissed pursuant to a motion for summary judgment.  But that is a matter for another day.[13]

## IV.   LEAVE TO AMEND

Federal Rule of Civil Procedure 15 provides that this Court "should freely give leave when justice so requires."  *Cole v. Sandel Med. Indus., LLC.,* 413 Fed. App'x. 683, 688 (5th Cir.

---

[12] For this same reason, the Court is unmoved by Plaintiff's argument that "Defendants did not provide any evidence whatsoever in support of their Motion to Dismiss."  (Doc. No. 12 at 3.)  That is not typically what Defendants do in such a motion.

[13] As discussed above, the Court dismisses Plaintiffs' claim under § 1132(c)(1) because Plaintiffs have not identified the plan administrator, nor pleaded that Plaintiffs' plan had no administrator.  *See* Section III.A.2.  The Court acknowledges that it may at first glance seem inconsistent for it to do so and yet also allow the § 1132(a)(1)(B) claim to move forward on the grounds that LeDay or LTHM may have assumed the responsibilities of the plan administrator.  The difference is attributable to the fact that the statute and the cases construing it allow suits under this latter section to go forward against a greater variety of defendants.

2011) (quoting Fed. R. Civ. P. 15(a)(2)).  In considering whether to grant leave to amend, the Court may weigh multiple factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice, and futility.  *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139 (5th Cir. 1993); *see also United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010) (holding that denial of leave to amend may be appropriate when amendment would be futile); *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (holding that a proposed amendment is futile if "the amended complaint would fail to state a claim upon which relief can be granted").  The Court cannot say that amendment of Plaintiffs' claims would be futile; it therefore grants leave to amend those claims within 20 days.

## V.      CONCLUSION

In light of the foregoing, the Motion to Dismiss is **DENIED** with respect to the § 1132(a)(1)(B) ERISA claims.  That is true for all Defendants.  The Motion is **GRANTED** with respect to all other ERISA claims and with respect to breach of contract, FLSA, and WARN Act claims brought against LeDay and LTHM.  All denials are without prejudice to re-filing within 20 days.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this 5th day of November, 2013.

_____

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**