IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIFFANY AARON AND | § | |
| EBONI HORN-WATSON, | § | |
| | § | |
| INDIVIDUALLY AND ON BEHALF OF | § | |
| ALL PERSONS SIMILARLY | § | |
| SITUATED, | § | |
| | § | CIVIL ACTION NO. 13-cv-1716 |
| *Plaintiffs* | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| JASON LEDAY, LTHM HOUSTON - | § | |
| OPERATIONS, LLC, AND | § | |
| KIGLAPAIT HOSPITAL | § | |
| CORPORATION d/b/a RENAISSANCE | § | |
| HOSPITAL GROVES | § | |
| | § | |
| *Defendants.* | | |

## PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Tiffany Aaron and Eboni Horn-Watson (collectively "Plaintiffs") file this

Second Amended class action on behalf of themselves and all other employees against Jason

LeDay, LTHM Houston-Operations, LLC, and Kiglapait Hospital Corporation d/b/a Renaissance

Hospital Groves (collectively, "Defendants") for: 1) violation of the Worker Adjustment and

Retraining Notification ("WARN") Act because the employees were not provided with either 60

days' notice prior to a plant closing or mass layoff or 60 days' pay, 2) violation of the Employee

Retirement Income Security ("ERISA") for failure to provide continuing health benefits; 3)

violation of ERISA for failure to provide notification of COBRA rights after their termination; 4)

breach of contract for failure to pay accrued paid-time-off; and 5) violation of the Fair Labor

Standards Act for unpaid wages due for their last week of work.  In support thereof, Plaintiffs respectfully show the Court as follows:

## II. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1367(a), 29 U.S.C. § 2104(a)(5), 29 U.S.C. § 1132(e)(1) and 29 U.S.C. § 201(b).

2. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(1) and 29 U.S.C. § 1132(e)(2) because Defendants have its principal place of business in this district, reside in this district, and/or the events giving rise to the cause of action alleged herein occurred in whole or in part in this division and judicial district.

## III. PARTIES

3. Plaintiff Tiffany Aaron resides in Harris County, Texas and worked for Defendants in Groves, TX.

4. Plaintiff Eboni-Horn Watson resides in Jefferson County, Texas and worked for Defendants in Groves, TX.

5. Defendant Jason LeDay is an individual and is Plaintiffs' employer within the meaning of ERISA, the WARN act, and the FLSA.  LeDay is also a plan administrator under ERISA.  LeDay may be served with process at 2807 Little York Rd., Houston, TX 77093 or wherever else he may be found.

6. Defendant LTHM Houston – Operations, LLC is a Texas Limited Liability Company and is Plaintiffs' employer within the meaning of ERISA, the WARN Act, and the FLSA.  LTHM Houston – Operations, LLC may be served with process by serving its registered agent, Jason LeDay at 2807 Little York Rd., Houston, TX 77093.  Its d/b/a is St. Anthony's Hospital.

7.  Defendant Kiglapait Hospital Corporation d/b/a Renaissance Hospital Groves is a Texas Corporation and is Plaintiffs' employer within the meaning of ERISA, the WARN Act, and the FLSA.  Kiglapait Hospital Corporation may be served with process by serving its registered agent, Travis Owens, at 6110 F.M. 1488 Road, Magnolia, TX 77354.

8.  Defendants have already made an appearance via their attorney-of-record.

9.  Jason LeDay is the sole or primary manager/director/partner/owner of several other entities, including but not limited to a) Axiom Industries, LLC, b) Little York Hospital RE GP, LLC, c) Groves Hospital, L.L.C., d) Axiom Investments, Ltd., e) Caerus Healthcare, LLC, and f) LeDay Interests, LLC.  Plaintiffs are currently not in possession of information that would suggest any of these other entities need to be included as co-defendants; however, discovery will be necessary to further evaluate this possibility and the complaint may need to be amended again to include any of these entities if deemed appropriate at a later date.

## IV. FACTS

Background

10. During all relevant times, Jason LeDay ("LeDay") is and was the sole manager and member of LTHM Houston – Operations, LLC ("St. Anthony's" or "LTHM").

11. During all relevant times, LeDay was the administrator of Kiglapait Hospital Corporation ("Kiglapait" or "Renaissance Hospital Groves").

12. During all relevant times, LeDay was the Chief Executive Officer of Renaissance Hospital Groves.

13. During all relevant times, LeDay was the administrator of LTHM.

14. During all relevant times, LeDay was the Chief Executive Officer of LTHM.

15. During all relevant times, LeDay had operational control over LTHM.

16. During all relevant times, LeDay had operational control over Renaissance Hospital Groves.

17. All Defendants are considered an "employer" under the FLSA. *See Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012).

18. All Defendants are considered an "employer" under ERISA. 29 U.S.C. § 1002(5).

19. During all relevant times, LeDay was either the assumed plan administrator of the medical and health benefit plans that covered Plaintiffs during their employment, or was their employer as defined under ERISA. Under either scenario, LeDay is liable for ERISA violations perpetrated against Plaintiffs and similarly situated employees.

20. Defendants LTHM and Kiglapait are considered "employers" under the WARN Act. *See* 29 U.S.C. § 2104(a)(1); 20 C.F.R. § 639.3(a)(2); *Administaff Cos. v. New York Joint Bd., Shirt & Leisurewear Div.*, 337 F.3d 454, 456 (5th Cir. 2003); *In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 242-43 (3d Cir. 2008) ("two or more affiliated companies may be considered a single business enterprise for WARN Act purposes").

21. LeDay is an employer under the WARN Act under an alter ego theory. *Plasticsource Workers Comm. v. Coburn*, 283 Fed. Appx. 181, 186 (5th Cir. 2008) ("[W]e must reject [the defendant's] contention that, as a matter of law, an individual can never be held liable for WARN Act violations.").

22. As explained in more detail throughout this document, LeDay and LTHM are alter egos of Kiglapait.

23. As explained in more detail throughout this document, LeDay is the alter ego of LTHM.

24. LTHM and/or LeDay own, operate, and have control over Renaissance Hospital Groves, located at 5500 39th Street, Groves, TX 77619.

25. LeDay owns, operates, and has control over at least two other hospitals – LTHM and South Hampton Community Hospital in Dallas, Texas.

26. Plaintiffs were employed by Defendants.

27. Plaintiffs worked at Renaissance Hospital Groves, located at 5500 39th Street, Groves, TX 77619.

28. On or about April 26, 2013 Plaintiffs and nearly all other employees that physically worked at Renaissance Hospital Groves (collectively "Workers") were abruptly and involuntarily terminated, without any warning, and the hospital was shut down.

29. Workers were not paid for the work they performed on April 21 – 26, 2013.

30. The Texas Workforce Commission ("TWC") has found that Workers are owed their last week's wages and PTO.  *Exhibit A*.   Defendants did not appeal the TWC decisions. These orders confirm that a portion of the payment to Workers is based on the employer's "written policy or written agreement."   Therefore, the Workers' employer contracted to provide fringe benefits in the form of PTO or vacation pay.

31. Workers were not offered continuing health benefits after their termination.

32. Workers were not provided with proper notification of cancellation of their benefits under COBRA.

33. Workers were not provided with proper notification of continuation of their benefits under COBRA.

34. Workers have had to incur additional expenses in order to obtain alternate insurance or for incurred medical expenses that should have been covered had they been able to maintain coverage via COBRA.

35. After April 26, 2013, a few employees continued to work periodically at Renaissance Hospital Groves even though that facility/location has been shut down.

    In addition to Kiglapait, LTHM and LeDay are employers of Plaintiffs and Workers

36. LeDay purchased LTHM on June 10, 2011.  He began serving as the CEO of LTHM in approximately June 2011.  He refers to the workers at LTHM as "my employees." *Exhibit B*.

37. The employee handbook provided to Workers is the same handbook provided to employees of LTHM.

38. The employee handbook states that "[n]o manager, supervisor or representative other than the Chief Executive Officer has the authority to enter into any agreement guaranteeing you employment for any specific period of time or to make any written or oral promises, agreements or commitments contrary to this policy." As noted above, LeDay was the Chief Executive Officer of LTHM.  The handbook also discussed pay, benefits, PTO, and related issues.

39. Human Resource personnel for LTHM made pay, time-off, vacation, and benefits decisions for Workers.

40. There was no payroll processing work done at Renaissance Hospital Groves with respect to Workers.

41. Workers' time sheets were submitted to Cathy McCue, Human Resources Director of LTHM.

42. For Workers who chose not to get paid via direct deposit, McCue and/or other agents of LTHM would physically send their paychecks (by a service such as UPS or Federal Express) to Renaissance Hospital Groves.

43. Workers received job-related directives or instructions directly from LTHM personnel on a daily basis.

44. LTHM's own documentation identifies Plaintiff Aaron as an employee.  An example is attached as *Exhibit C*.  To reiterate, St. Anthony's Hospital is the d/b/a of LTHM.

45. LTHM personnel physically hosted job fairs at the Renaissance Hospital Corporation location.  LeDay participated in and played a significant role in these job fairs.

46. LeDay gave tours of Renaissance Hospital Groves to businesses considering bringing additional services to that location.

47. Worker Stephanie Reynolds reported directly to David Mak, the CFO of LTHM, and McCue.

48. Generally all issues regarding PTO, paychecks, and benefits were communicated to and from McCue.  On at least one occasion, Mak made PTO decisions regarding Workers. *Exhibit D*.

49. Documents to obtain Medicare and Medicaid certification on behalf of Renaissance Hospital Groves were signed or authorized by LeDay and/or LTHM.

50. All medical billing and invoicing based on patient services conducted at Renaissance Hospital Groves was handled through LTHM.

51. Kiglapait's patient records and other medical files were maintained by LTHM. Therefore, if Kiglapait and LTHM contend they are not a single business enterprise, then

they are admitting to violating the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

52. After their terminations, Workers communicated with LTHM human resources personnel (primarily Cathy McCue) with regards to obtaining final pay and benefits information.  Examples of these communications are attached as *Exhibit E*.

53. During all relevant times, LeDay maintained Workers' personnel records.

54. During all relevant times, LTHM maintained Workers' personnel records.

55. During all relevant times, LeDay determined the rate and method of payment of Workers.

56. During all relevant times, LTHM determined the rate and method of payment of Workers.

57. During all relevant times, LeDay supervised Workers.

58. During all relevant times, LTHM supervised Workers.

59. During all relevant times, LeDay made hiring, firing, promotion, demotion, and other employment decisions of Workers and other individuals who may have worked at Renaissance Hospital Groves.

60. During all relevant times, LTHM made hiring, firing, promotion, demotion, and other employment decisions of Workers and other individuals who may have worked at Renaissance Hospital Groves.

61. LTHM and/or LeDay made the decision to terminate Workers on or about April 26, 2013.

62. LTHM and/or LeDay made the decision to not pay Workers their final week's wages from approximately April 21 – 26, 2013.

8

63. LTHM and/or LeDay made the decision to not comply with the TWC wage determination orders demanding payment for the Workers' last week's wages and accrued PTO.

64. Although Kiglapait is identified as the employer on these TWC wage determination orders, all Defendants are liable for the unpaid wages under the FLSA and Texas Payday Act because they are all considered employers.  They are also liable for liquidated damages under the FLSA.

65. Kiglapait contends that it has no money to pay Workers.  If that is true, the reason is because of LTHM's and/or LeDay's actions.

66. Defendants are trying to avoid paying Workers their last week's wages by claiming that Kiglapait has no money, even though LTHM and/or LeDay have total control over all operations, finances, and personnel decisions regarding Kiglapait.  Therefore LTHM and LeDay are utilizing Kiglapait in order to avoid complying with the Texas Payday Act and the FLSA.

67. Soon after the termination of Workers, LeDay personally sold equipment that was used at Renaissance Hospital Groves.  The revenue generated from these sales was not used to compensate Workers.  This was based on LeDay's decision.

68. Soon after the termination of Workers, LeDay ordered or directed the movement of other equipment from Renaissance Hospital Groves to LTHM.  Much of this equipment was (and may still be) stored at LTHM.

69. Soon after the termination of Workers, a pharmacist working at LTHM came to Renaissance Hospital Groves and physically removed medications from the pharmacy to take to LTHM.

9

70. At least one Worker came back temporarily to work at Renaissance Hospital Groves from approximately mid-May to mid-July 2013.  For this work, she was initially compensated by Kiglapait, but was later compensated by LTHM.  All pay decisions regarding this employee for this time period were made by LTHM and LeDay.  This employee was not paid (and still has not been paid) for the work she did in April 21 – 26, 2013 and for a substantial period of time in July 2013.

71. Kiglapait does not and did not maintain a bank account in its own name.  For example, a check made out by a Worker to Renaissance Hospital for the purchase of a shirt was actually deposited into the operating account of LTHM.  *Exhibit F*.

72. The real property of the location of Renaissance Hospital Groves (5500 39th Street, Groves, TX) is actually owned by Groves Hospital LLC, which has the identical address of LTHM (2807 Little York Road, Houston, TX 77093).  *Exhibit G*.

73. Kiglapait has no liquid assets or very little liquid assets.

74. Kiglapait never had any board meetings.

75. Kiglapait did not advertise its services under the name "Kiglapait," or "Kiglapait Hospital Corporation."

76. Kiglapait did not and does not maintain its own separate financial statements.

77. Kiglapait did not and does not have its own budget.

78. At all relevant times, Kiglapait was undercapitalized.

79. At all relevant times, Kiglapait was underfunded.

80. LeDay was responsible for undercapitalizing and underfunding Kiglapait.

81. LTHM and Kiglapait did not operate as separate entities.

82. LTHM and Kiglapait combined their daily operations.

83. LTHM and Kiglapait had and have common offices.

84. LTHM and Kiglapait had and have common or centralized accounting.

85. LTHM and Kiglapait had and have common or centralized record keeping.

86. The personnel files of Workers are maintained by LTHM and/or LeDay.

87. At all relevant times, LTHM and/or LeDay were responsible for paying employees of Kiglapait.

88. LTHM employees rendered services on behalf of Kiglapait.

89. There were undocumented transfers of funds or assets between LTHM and Kiglapait.

90. There were undocumented transfers of funds or assets between LeDay and LTHM.

91. There were undocumented transfers of funds or assets between LeDay and Kiglapait.

92. There were undocumented transfers of funds or assets between at least one of the entities identified in paragraph #9 above and Kiglapait, LTHM, and/or LeDay.

93. LTHM and Kiglapait integrated their resources to achieve a common business purpose.

94. LeDay utilized Kiglapait for his own personal purposes and benefit.

95. LeDay has and had sole control over Kiglapait.

96. LeDay utilizes LTHM for his own personal purposes and benefit.

97. LeDay has and had sole control over LTHM.

98. LeDay did not and does not separate his personal property from that of Kiglapait.

99. LeDay did not and does not separate his personal property from that of LTHM.

100. During all relevant times, Travis Owens was officially identified as the sole director of Kiglapait.  Despite this fact, Owens never had and still has no control over hiring, firing, and other personnel decisions of Workers; he never had and still has no control over the operations of Kiglapait; he never had and still has no control over the assets of Kiglapait;

he never has and still does not act in the best interest of Kiglapait; and he never conducted or participated in any Kiglapait board meetings.

101. Owens was not involved in the decision to terminate Workers.

102. Instead, LeDay had total control over Kiglapait and Workers' employment situation.

103. LeDay never has acted and still does not act in the best interest of Kiglapait.

104. LeDay never has acted and still does not act in the best interest of LTHM.

105. Kiglapait was merely a tool or business conduit of LeDay and LTHM.

106. LeDay and LTHM utilized Kiglapait to attempt to circumvent their obligations under the FLSA, ERISA, and the WARN Act.

107. LeDay and LTHM are relying on the fact that Kiglapait has no (or very little) liquid assets in order to justify Defendants' alleged inability to pay Workers or otherwise refusing to comply with the TWC's wage determination orders.

108. For all purposes of this lawsuit, LTHM and Kiglapait must be considered a single business enterprise.

109. For all purposes of this lawsuit, LTHM and LeDay must be considered employers of Workers.  In the alternative, LTHM and LeDay must be considered the alter egos of Kiglapait.

WARN Act Violation

110. Defendants employed 100 or more full-time employees.  Alternatively, Defendants employed 100 or more employees, including part-time employees, who in the aggregate worked at least 4,000 hours per week.

111. LTHM and Kiglapait are both jointly and separately a business enterprise under the WARN Act.

112. Renaissance Hospital Groves, a facility or single site of employment, was shut down on or about April 26, 2013.  The shut-down resulted in an employment loss for 50 or more employees during at least a 30-day period.  This is considered a plant closing, as defined under the WARN Act.

113. Alternatively, the terminations on or about April 26, 2013 affected between 50 – 499 employees and over 33 percent of LTHM's and/or Kiglapait's active workforce.  This is considered a mass layoff, as defined under the WARN Act.

114. Prior to April 26, 2013, there was no notification that the Workers would be terminated or that Renaissance Hospital Groves would be shut down.

115. After the shut-down, LeDay initially indicated that the hospital was temporarily shut down to reorganize, deal with internal construction, and for purposes of changing its focus to behavioral health and senior care.  He communicated this message to Groves City Manager, D.E. Sosa.  However, the shut-down is apparently permanent.

116. Kiglapait and/or LTHM did not face any financial distress or unforeseeable business circumstances.  In fact, after the shut-down, Defendants initially indicated it had plans to reopen the hospital.  Indeed, if there were unforeseen business circumstances that led to a sudden shut-down, it would be inconceivable that LeDay would announce that it had plans to reopen.

117. Upon information and belief, to any extent Kiglapait and/or LTHM contend they did experience financial distress, such alleged distress was initiated by LeDay improperly handling monies/assets belonging to Kiglapait and/or LTHM.

118. Therefore, Defendants were obligated to provide 60 days' notice prior to the layoff, but they did not.

119. Based on the above and other allegations in this document, LeDay is liable for the WARN Act violation under the alter ego theory.

120. Therefore, all defendants are liable for the WARN Act violation. *See* 29 C.F.R. 639.3(a)(2).

ERISA Violations

121. During their employment, the Workers were provided with medical and other health benefits.

122. Many of the Workers and their beneficiaries heavily depended on these benefits.  For example, Plaintiff Horn-Watson was approximately eight months pregnant when she was terminated.  She lost insurance coverage immediately and had to resort to Medicaid coverage to assist with delivery and initial post-partum care.  This coverage ended as of September 30, 2013.

123. Workers were not provided with a Summary Plan Description.

124. Defendants failed to maintain a written plan document regarding Workers' medical and other health benefits.

125. With respect to the medical and other health benefits that covered Workers, Defendants did not file the required Form 5500 Annual Returns/Reports with the Department of Labor and/or Internal Revenue Service.  Indeed, in response to a Freedom of Information Act request, the DOL confirmed this fact.  *Exhibit H*.

126. Defendants failed to designate a plan administrator with respect to the plan covering Workers' medical and other health benefits.

127. However, LeDay actually controlled the administration of the medical and other health benefit plan(s) that covered Workers.  This fact parallels the fact that LeDay is the

administrator of LTHM's medical and health benefit plan. *Exhibit I*. Therefore, LeDay is either the defacto plan administrator of the plan that covered Workers or is an employer as defined by ERISA. 29 U.S.C. § 1002(5).

128. After the Workers were terminated on April 26, 2013, they became entitled to benefits under COBRA.

129. COBRA obligations extend to related organizations of an employer. Therefore, even if Kiglapait had separate distinct plan for Workers, because LTHM and/or LeDay are either related organizations of Kiglapait or are the actual employers themselves, LTHM and/or LeDay were obligated to provide COBRA notices to Workers.

130. Defendants were obligated to send a COBRA notice to Workers within 44 days of their termination. The Workers have still not received such notification.

131. Workers may have been covered under a welfare plan specifically designed for employees who physically worked at the Renaissance Hospital Groves location. This plan may have been terminated. If so, then the employer or plan administrator of this plan was obligated to send a notice to Workers and other covered beneficiaries as provided under 29 C.F.R. 2590.606-4(c). This has not been done.

132. In addition, because LTHM is considered an employer of Workers, the Workers are entitled to participate, via COBRA, in the same welfare plans covering employees of LTHM. Neither LTHM nor LeDay sent a COBRA election notice to the Workers.

133. Under 29 U.S.C. § 1132(c)(1), Defendants are liable for up to $110 per day per beneficiary for the failure to send the COBRA election notices as well as for failure to send a COBRA unavailability notice under 29 C.F.R. 2590.606-4(c).

134. In addition to the lack of notice, the Workers' health coverage has actually been terminated without the option to participate via COBRA.  Therefore, they are no longer covered under any Defendants' health care plans.

135. Workers are incurring increased and unexpected medical expenses due to Defendants' failure to allow them to participate in a welfare plan via COBRA.

136. Although COBRA benefits may terminate early if an employer ceases to maintain any group health plan, that is not the case here.  At a minimum, LTHM is an employer of Workers.  In addition, LeDay is operating two other hospitals with several employees – St. Anthony's Hospital in Houston (LTHM) and South Hampton Community Hospital in Dallas.  Therefore, Defendants were and still are obligated to provide COBRA coverage.

Breach of Contract

137. As a benefit of employment, the Workers received Paid-Time-Off ("PTO") benefits. Defendants' employee handbook explicitly states that "[e]mployees who are laid off or terminated for cause will receive accrued PTO."

138. This handbook is considered a contract that provided the Workers with terms and conditions of employment.

139. The Workers have not received compensation for their accrued PTO.

FLSA Violation

140. At all material times, Defendants have been employers within the meaning of 3(d) of the FLSA.  29 U.S.C. § 203(d).

141. At all material times, Defendants have been enterprises within the meaning of 3(r) of the FLSA.  29 U.S.C. § 203(r).

142. At all material times, Defendants have been enterprises in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because Defendants have had and continue to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

143. Furthermore, Defendants have annual gross business revenue of not less than $500,000.

144. In performing their duties for Defendants, the Workers were engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206 – 207.

145. The Workers were regularly paid twice a month.

146. The Workers worked from April 21 – 26, 2013; however, they were not paid any wages for the work they performed for those six days.

147. Under the FLSA, the wages for those six days were due on or before the next regularly scheduled payday. As of the date of this Complaint, the Workers have not been paid for the work performed on those six days. Therefore, Defendants failed to comply with the FLSA.

148. Under the Texas Payday Law, the Workers' final pay is due within six calendar days of their termination.

149. Several employees complained about not receiving their final pay, and even the media reported the lack of payment.[1]

150. Defendants have not made a good faith effort to comply with the FLSA.

151. Defendants willfully violated the FLSA and/or showed reckless disregard in attempting to comply with the FLSA.

### V. CLASS ACTION ALLEGATIONS

---

[1] *See* http://www.12newsnow.com/story/22265120/disgruntled-employees-hold-silent-protest-outside-renaissance-hospital *(last visited November 11, 2013).*

152. Plaintiffs incorporate the preceding paragraphs by reference.

153. Plaintiffs anticipate two proposed classes.

154. The first class will include all employees who worked at Renaissance Hospital Groves and were involuntarily terminated on or about April 26, 2013. The date of termination may need to be expanded or otherwise modified, depending on initial discovery efforts.

155. The second class will include all employees who worked at Renaissance Hospital Groves, were involuntarily terminated on or about April 26, 2013, participated in a health, medical, dental, vision, and/or other welfare plan based on their employment with Defendants, had their benefits terminated upon their termination, and did not receive a COBRA notice. In addition, beneficiaries of these employees will need to be included in this portion of the class.

156. Several Workers will be included in both proposed classes.

157. The proposed classes meet the requirements of Rule 23 of the Federal Rules of Civil Procedure.

## VI. CAUSES OF ACTION

158. Plaintiffs incorporate the preceding paragraphs by reference.

A. *WARN Act violation against all Defendants*

159. LTHM and/or Kiglapait failed to give the Workers 60 days' notice prior to closing, as required by 29 U.S.C. § 2102(a).

160. This failure makes LTHM and/or Kiglapait liable to Workers for 60 days of pay, plus costs and attorney's fees. *See* 29 U.S.C. § 2104(a).

161. In the alternative, LeDay is liable for the WARN Act violation under the alter ego theory.

    B.       <u>*ERISA – 29 U.S.C. § 1132(a)(1)(B) against all Defendants*</u>

162. Plaintiffs' medical and other health insurance benefits have been improperly terminated.

163. Plaintiffs accordingly assert a claim under section 502(a)(1)(B) of ERISA to recover past benefits owed, enforce their rights, and clarify their future rights to health insurance benefits.

    C.       <u>*ERISA – 29 U.S.C. § 1132(c)(1) against all Defendants*</u>

164. As indicated above, all Defendants are considered "employers" of Workers under ERISA.  Alternatively, LeDay is the plan administrator of the health plan that covered Workers during their employment.

165. Plaintiffs assert claims under section 502(c)(1) of ERISA to recover a penalty of $110 per day per beneficiary for LeDay's and/or LTHM's failure to send the COBRA election notice within 44 days of the cessation of their health insurance, as required by 29 U.S.C. § 1166(a)(4); 29 C.F.R. 2590.606-4.

166. In addition, if in fact the health insurance plan was terminated, Defendants failed to send a "notice of unavailability of continuation coverage" and is similarly liable for the $110 per day per beneficiary penalty.  29 C.F.R. 2590.606-4(c).

    D.       <u>*Breach of Contract against Defendant Kiglapait*</u>

167. Plaintiffs were promised PTO benefits and that accrued PTO benefits would be paid out when they were terminated.

168. Kiglapait has not paid such PTO and has, therefore, breached its promise to provide such benefits.

E.    *Fair Labor Standards Act violation against all Defendants*

169. By failing to pay Plaintiffs for the work they performed from April 21 – 26, 2013, Defendants have violated the FLSA.

170. All Defendants are liable under the FLSA.  *See* 29 U.S.C. § 203(d); *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012); *Artis v. Asberry*, 2012 U.S. Dist. LEXIS 149410, *11 – 12, c.a. no. G-10-323 (S.D. Tex. Oct. 16, 2012) (citing 29 C.F.R. 791.2(a)); *Fontenot v. Brouillette*, 2013 U.S. Dist. LEXIS 5703, *16-17, c.a. no. 4:10-cv-01053 (S.D. Tex. Jan. 15, 2013).

171. Defendants did not pay Plaintiffs the required minimum wage, their regular rate of pay, any overtime, and/or any fixed weekly salaries.  Therefore, any employees that may have originally been considered exempt from the overtime requirements would actually be considered misclassified for the April 21 – 26 time period and be owed an hourly rate plus overtime.

172. Defendants are liable to Plaintiffs and Workers for unpaid wages and liquidated damages in an amount equal to their unpaid wages.

## VII. JURY DEMAND

173. Plaintiffs hereby request that a jury decide all factual issues in this case to the extent permitted by applicable law.

## VIII. PRAYER

174. Plaintiffs respectfully request that this Court:

    a)  order this action to proceed as a class action;

    b)  require Defendants to maintain health insurance benefits for Plaintiffs and class members;

c)  require Defendants to provide Plaintiffs and each covered class member (including beneficiaries) with written notice of the rights provided under COBRA;

d)  appoint an independent administrator to administer benefits under the ERISA plans for Plaintiffs and all covered class members;

e)  require Defendants to reimburse Plaintiffs and all covered class members (including beneficiaries) for medical expenses they incurred during the time period that they otherwise should have been covered by a relevant welfare plan;

f)  require Defendants to reimburse Plaintiffs and all covered class members (including beneficiaries) for increased insurance premiums they have paid for medical insurance during the time period that they otherwise should have been covered by a relevant welfare plan based on COBRA coverage;

g)  order Defendants to pay Plaintiffs and all class members 60 days' pay after the date of their termination;

h)  order Defendants to pay $110 per day to Plaintiffs and all covered class members (including beneficiaries) from the date notice was required of a qualifying event (or otherwise for their failure to provide COBRA notifications);

i)  order Defendants to pay Plaintiffs and all class members their accrued PTO;

j)  order Defendants to pay Plaintiffs and all class members their unpaid compensation, overtime pay, and liquidated damages under the FLSA;

k)  order Defendants to pay to Plaintiffs and class members any other actual, consequential, and incidental damages;

l)  award Plaintiffs attorney's fees and costs;

m)  award pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

n)  award all such other and further relief to which Plaintiffs and class members may show themselves to be justly entitled.

Respectfully submitted,

Dated: November 12, 2013

SUD LAW P.C.

*/s/ Nitin Sud*
_____
    Nitin Sud
    State Bar No. 24051399
    Federal ID No. 611307
    4545 Mount Vernon Street
    Houston, TX 77006
    Phone: 832-623-6420
    Fax: 832-304-2552

Attorney for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I certify that Plaintiffs' Second Amended Class Action Complaint was served on the following attorney in accordance with the Federal Rules of Civil Procedure on November 12, 2013:

C. Christian Frederiksen, Jr.
Jennifer Poe
Hallett & Perrin, P.C.
1445 Ross Avenue
Suite 2400
Dallas, Texas 75202


_____*/s/ Nitin Sud*_____
Nitin Sud