IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIFFANY AARON, EBONI HORN-WATSON, STACEY BLANCHETTE, STEPHANIE REYNOLDS, SANDRA BOUDREAUX, CYNTHIA CLARK, ESTELLE FOSTER, SUSAN HEBERT, AND CAROLYN HOLMAN, | § § § § § § § | |
| *Plaintiffs* | § § | |
| v. | § § | CIVIL ACTION NO. 13-cv-1716 |
| JASON LEDAY, LTHM HOUSTON -OPERATIONS, LLC, AND KIGLAPAIT HOSPITAL CORPORATION d/b/a RENAISSANCE HOSPITAL GROVES | § § § § § | |
| *Defendants.* | § § | |

## PLAINTIFFS' THIRD AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Tiffany Aaron, Eboni Horn-Watson, Stacey Blanchette, Stephanie Reynolds, Sandra Boudreaux, Cynthia Clark, Estelle Foster, Susan Hebert, and Carolyn Holman (collectively "Plaintiffs") file this Third Amended complaint[1] against Jason LeDay, LTHM Houston-Operations, LLC, and Kiglapait Hospital Corporation d/b/a Renaissance Hospital Groves (collectively, "Defendants") for: 1) violation of the Worker Adjustment and Retraining Notification ("WARN") Act because the employees were not provided with either 60 days' notice prior to a plant closing or mass layoff or 60 days' pay, 2) violation of the Employee Retirement Income Security ("ERISA") for breach of fiduciary duties; 3) violation of ERISA for

---

[1] Given LTHM Houston-Operations, LLC's recent bankruptcy filing and more specific information regarding Jason LeDay's improper actions, this amended complaint is primarily focusing on seeking recovery from Jason LeDay personally. Furthermore, Plaintiffs are withdrawing its class action allegations.

failure to provide notification of COBRA rights after their termination; 4) breach of contract for failure to pay accrued paid-time-off; and 5) violation of the Fair Labor Standards Act for unpaid wages due for their last week of work.  In support thereof, Plaintiffs respectfully show the Court as follows:

## II. JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1367(a), 29 U.S.C. § 2104(a)(5), 29 U.S.C. § 1132(e)(1) and 29 U.S.C. § 201(b).

2.  Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(1) and 29 U.S.C. § 1132(e)(2) because Defendants have its principal place of business in this district, reside in this district, and/or the events giving rise to the cause of action alleged herein occurred in whole or in part in this division and judicial district.

## III. PARTIES

3.  Plaintiff Tiffany Aaron resides in Harris County, Texas and worked for Defendants in Groves, TX.

4.  Plaintiff Eboni-Horn Watson resides in Jefferson County, Texas and worked for Defendants in Groves, TX.

5.  Plaintiff Stacey Blanchette resides in Texas and worked for Defendants in Groves, TX.

6.  Plaintiff Stephanie Reynolds resides in Texas and worked for Defendants in Groves, TX.

7.  Plaintiff Sandra Boudreaux resides in Texas and worked for Defendants in Groves, TX.

8.  Plaintiff Cynthia Clark resides in Texas and worked for Defendants in Groves, TX.

9.  Plaintiff Estelle Foster resides in Texas and worked for Defendants in Groves, TX.

10. Plaintiff Susan Hebert resides in Texas and worked for Defendants in Groves, TX.

11. Plaintiff Carolyn Holman resides in Texas and worked for Defendants in Groves, TX.

12. Defendant Jason LeDay is an individual and is Plaintiffs' employer within the meaning of ERISA, the WARN act, and the FLSA. LeDay is also a plan administrator under ERISA. LeDay may be served with process at 2807 Little York Rd., Houston, TX 77093 or wherever else he may be found.

13. Defendant LTHM Houston – Operations, LLC is a Texas Limited Liability Company and is Plaintiffs' employer within the meaning of ERISA, the WARN Act, and the FLSA. LTHM Houston – Operations, LLC may be served with process by serving its registered agent, Jason LeDay at 2807 Little York Rd., Houston, TX 77093. Its d/b/a is St. Anthony's Hospital.

14. Defendant Kiglapait Hospital Corporation d/b/a Renaissance Hospital Groves is a Texas Corporation and is Plaintiffs' employer within the meaning of ERISA, the WARN Act, and the FLSA. Kiglapait Hospital Corporation may be served with process by serving its registered agent, Travis Owens, at 6110 F.M. 1488 Road, Magnolia, TX 77354.

15. Defendants have already made an appearance via their attorney-of-record.

16. Jason LeDay is the sole or primary manager/director/partner/owner of several other entities, including but not limited to a) Axiom Industries, LLC, b) Little York Hospital RE GP, LLC, c) Groves Hospital, L.L.C., d) Axiom Investments, Ltd., e) Caerus Healthcare, LLC, and f) LeDay Interests, LLC.

## IV. FACTS

Background

17. During all relevant times, Jason LeDay ("LeDay") is and was the sole manager and member of LTHM Houston – Operations, LLC ("St. Anthony's" or "LTHM").

18. During all relevant times, LeDay was the administrator of Kiglapait Hospital Corporation ("Kiglapait" or "Renaissance Hospital Groves").

19. During all relevant times, LeDay was the Chief Executive Officer of Renaissance Hospital Groves.

20. During all relevant times, LeDay was the administrator of LTHM.

21. During all relevant times, LeDay was the Chief Executive Officer of LTHM.

22. During all relevant times, LeDay had operational control over LTHM.

23. During all relevant times, LeDay had operational control over Renaissance Hospital Groves.

24. **LeDay obtained a $23,500,000 loan in late 2012 from First National Bank in order to purchase Renaissance Hospital Groves (Kiglapait).** *See Exhibit A.* **The other entities that were borrowers under the loan were apparently shell corporations exclusively owned, controlled, directed, and managed by LeDay personally. For example, co-borrower Groves Hospital, L.L.C. was created just two weeks before LeDay entered into the loan agreement with First National Bank. LeDay was the sole manager of Groves Hospital, L.L.C., and that entity forfeited its existence in early 2014. The other co-borrower – Axiom Industries, LLC – is also solely managed/directed by LeDay.**

25. **Three other entities that guaranteed a portion of the loan were also exclusively owned, controlled, directed, and managed by LeDay personally. Notably, LeDay signed on behalf of nearly all the entities that were involved in this loan agreement.**

26. **By the end of 2012, LeDay (either directly or indirectly) obtained the requested loan from First National Bank.**

27. **Interestingly, only a few months later (in April 2013), Renaissance Hospital Groves completely shut down, unable to pay any of its employees or continue to treat patients.**

28. **Furthermore, St. Anthony's Hospital, which was controlled by LeDay as CEO from mid-2011 recently filed for bankruptcy and is currently liquidating its assets.**

29. **As an overview, <u>LeDay somehow managed to obtain $23,500,000 from a bank and soon destroy the two hospitals that he solely managed and controlled</u>. It is unclear as to exactly what LeDay did with the $23,500,000 or how he managed to obtain approval for such a large loan.**

30. **Although it is possible that LeDay brutally failed at running the hospitals, given the short time-frame in which he obtained a large amount of money and the complete shutdown of two hospitals that he exclusively controlled, it is more likely that LeDay was only interested in financially benefitting himself.**

31. **Upon information and belief and based on potential witnesses, LeDay has since transferred (either directly or indirectly) large amounts of money to offshore bank accounts.**

32. All Defendants are considered an "employer" under the FLSA. *See Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012).

33. All Defendants are considered an "employer" under ERISA. 29 U.S.C. § 1002(5).

34. During all relevant times, LeDay was either the assumed plan administrator of the medical and health benefit plans that covered Plaintiffs during their employment, or was their employer as defined under ERISA. Under either scenario, LeDay is liable for ERISA violations perpetrated against Plaintiffs and similarly situated employees.

35. Defendants LTHM and Kiglapait are considered "employers" under the WARN Act. *See* 29 U.S.C. § 2104(a)(1); 20 C.F.R. § 639.3(a)(2); *Administaff Cos. v. New York Joint Bd., Shirt & Leisurewear Div.*, 337 F.3d 454, 456 (5th Cir. 2003); *In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 242-43 (3d Cir. 2008) ("two or more affiliated companies may be considered a single business enterprise for WARN Act purposes").

36. LeDay is an employer under the WARN Act under an alter ego theory. *Plasticsource Workers Comm. v. Coburn*, 283 Fed. Appx. 181, 186 (5th Cir. 2008) ("[W]e must reject [the defendant's] contention that, as a matter of law, an individual can never be held liable for WARN Act violations.").

37. As explained in more detail throughout this document, LeDay and LTHM are alter egos of Kiglapait.

38. As explained in more detail throughout this document, LeDay is the alter ego of LTHM.

39. LTHM and/or LeDay own, operate, and have control over Renaissance Hospital Groves, located at 5500 39th Street, Groves, TX 77619.

40. LeDay owns, operates, and has control over at least two other hospitals – LTHM and South Hampton Community Hospital in Dallas, Texas.

41. Plaintiffs were employed by Defendants.

42. Plaintiffs worked at Renaissance Hospital Groves, located at 5500 39th Street, Groves, TX 77619.

43. On or about April 26, 2013 Plaintiffs and nearly all other employees that physically worked at Renaissance Hospital Groves were abruptly and involuntarily terminated, without any warning, and the hospital was shut down.

44. Plaintiffs were not paid for the work they performed on April 21 – 26, 2013.

45. The Texas Workforce Commission ("TWC") has found that Plaintiffs are owed their last week's wages and PTO. Defendants did not appeal the TWC decisions. These orders confirm that a portion of the payment to Plaintiffs is based on the employer's "written policy or written agreement." Therefore, the Plaintiffs' employer contracted to provide fringe benefits in the form of PTO or vacation pay.

46. Plaintiffs were not offered continuing health benefits after their termination.

47. Plaintiffs were not provided with proper notification of cancellation of their benefits under COBRA.

48. Plaintiffs were not provided with proper notification of continuation of their benefits under COBRA.

49. Plaintiffs have had to incur additional expenses in order to obtain alternate insurance or for incurred medical expenses that should have been covered had they been able to maintain coverage via COBRA.

50. After April 26, 2013, a few employees continued to work periodically at Renaissance Hospital Groves even though that facility/location has been shut down.

   In addition to Kiglapait, LTHM and LeDay are employers of Plaintiffs

51. LeDay purchased LTHM on June 10, 2011. He began serving as the CEO of LTHM in approximately June 2011. He refers to the workers at LTHM as "my employees."

52. The employee handbook provided to Plaintiffs is the same handbook provided to employees of LTHM.

53. The employee handbook states that "[n]o manager, supervisor or representative other than the Chief Executive Officer has the authority to enter into any agreement guaranteeing you employment for any specific period of time or to make any written or

oral promises, agreements or commitments contrary to this policy." As noted above, LeDay was the Chief Executive Officer of LTHM. The handbook also discussed pay, benefits, PTO, and related issues.

54. Human Resource personnel for LTHM made pay, time-off, vacation, and benefits decisions for Plaintiffs.

55. There was no payroll processing work done at Renaissance Hospital Groves with respect to Plaintiffs.

56. Plaintiffs' time sheets were submitted to Cathy McCue, Human Resources Director of LTHM.

57. For Plaintiffs who chose not to get paid via direct deposit, McCue and/or other agents of LTHM would physically send their paychecks (by a service such as UPS or Federal Express) to Renaissance Hospital Groves.

58. Plaintiffs received job-related directives or instructions directly from LTHM personnel on a daily basis.

59. LTHM's own documentation identifies Plaintiff Aaron as an employee.

60. LTHM personnel physically hosted job fairs at the Renaissance Hospital Corporation location. LeDay participated in and played a significant role in these job fairs.

61. LeDay gave tours of Renaissance Hospital Groves to businesses considering bringing additional services to that location.

62. Plaintiff Stephanie Reynolds reported directly to David Mak, the CFO of LTHM, and McCue.

63. Generally all issues regarding PTO, paychecks, and benefits were communicated to and from McCue. On at least one occasion, Mak made PTO decisions regarding Plaintiffs.

64. Documents to obtain Medicare and Medicaid certification on behalf of Renaissance Hospital Groves were signed or authorized by LeDay and/or LTHM.

65. All medical billing and invoicing based on patient services conducted at Renaissance Hospital Groves was handled through LTHM.

66. Kiglapait's patient records and other medical files were maintained by LTHM. Therefore, if Kiglapait and LTHM contend they are not a single business enterprise, then they are admitting to violating the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

67. After their terminations, Plaintiffs communicated with LTHM human resources personnel (primarily Cathy McCue) with regards to obtaining final pay and benefits information.

68. During all relevant times, LeDay maintained Plaintiffs' personnel records.

69. During all relevant times, LTHM maintained Plaintiffs' personnel records.

70. During all relevant times, LeDay determined the rate and method of payment of Plaintiffs.

71. During all relevant times, LTHM determined the rate and method of payment of Plaintiffs.

72. During all relevant times, LeDay supervised Plaintiffs.

73. During all relevant times, LTHM supervised Plaintiffs.

74. During all relevant times, LeDay made hiring, firing, promotion, demotion, and other employment decisions of Plaintiffs and other individuals who may have worked at Renaissance Hospital Groves.

75. During all relevant times, LTHM made hiring, firing, promotion, demotion, and other employment decisions of Plaintiffs and other individuals who may have worked at Renaissance Hospital Groves.

76. LeDay made the decision to terminate Plaintiffs on or about April 26, 2013.

77. LeDay made the decision to not pay Plaintiffs their final week's wages from approximately April 21 – 26, 2013.

78. LeDay made the decision to not comply with the TWC wage determination orders demanding payment for the Plaintiffs' last week's wages and accrued PTO.

79. Although Kiglapait is identified as the employer on these TWC wage determination orders, all Defendants are liable for the unpaid wages under the FLSA and Texas Payday Act because they are all considered employers. They are also liable for liquidated damages under the FLSA.

80. Kiglapait contends that it has no money to pay Plaintiffs. If that is true, the reason is because of LeDay's actions.

81. Defendants are trying to avoid paying Plaintiffs their last week's wages by claiming that Kiglapait has no money, even though LeDay has total control over all operations, finances, and personnel decisions regarding Kiglapait. Therefore LeDay is utilizing Kiglapait in order to avoid complying with the Texas Payday Act and the FLSA.

82. Soon after the termination of Plaintiffs, LeDay personally sold equipment that was used at Renaissance Hospital Groves. The revenue generated from these sales was not used to compensate Plaintiffs. This was based on LeDay's decision.

83. Soon after the termination of Plaintiffs, LeDay ordered or directed the movement of other equipment from Renaissance Hospital Groves to LTHM. Much of this equipment was (and may still be) stored at LTHM.

84. Soon after the termination of Plaintiffs, a pharmacist working at LTHM came to Renaissance Hospital Groves and physically removed medications from the pharmacy to take to LTHM.

85. At least one former employee came back temporarily to work at Renaissance Hospital Groves from approximately mid-May to mid-July 2013. For this work, she was initially compensated by Kiglapait, but was later compensated by LTHM. All pay decisions regarding this employee for this time period were made by LTHM and/or LeDay. This employee was not paid (and still has not been paid) for the work she did in April 21 – 26, 2013 and for a substantial period of time in July 2013.

86. Kiglapait does not and did not maintain a bank account in its own name. For example, a check made out by a Plaintiff to Renaissance Hospital for the purchase of a shirt was actually deposited into the operating account of LTHM.

87. The real property of the location of Renaissance Hospital Groves (5500 39th Street, Groves, TX) is actually owned by Groves Hospital LLC, which has the identical address of LTHM (2807 Little York Road, Houston, TX 77093).

88. Kiglapait has no liquid assets.

89. Kiglapait never had any board meetings.

90. Kiglapait did not advertise its services under the name "Kiglapait," or "Kiglapait Hospital Corporation."

91. Kiglapait did not and does not maintain its own separate financial statements.

92. Kiglapait did not and does not have its own budget.

93. At all relevant times, Kiglapait was undercapitalized.

94. At all relevant times, Kiglapait was underfunded.

95. LeDay was responsible for undercapitalizing and underfunding Kiglapait.

96. LTHM and Kiglapait did not operate as separate entities.

97. LTHM and Kiglapait combined their daily operations.

98. LTHM and Kiglapait had and have common offices.

99. LTHM and Kiglapait had and have common or centralized accounting.

100. LTHM and Kiglapait had and have common or centralized record keeping.

101. The personnel files of Plaintiffs are maintained by LTHM and/or LeDay.

102. At all relevant times, LTHM and/or LeDay were responsible for paying employees of Kiglapait.

103. LTHM employees rendered services on behalf of Kiglapait.

104. There were undocumented transfers of funds or assets between LTHM and Kiglapait.

105. There were undocumented transfers of funds or assets between LeDay and LTHM.

106. There were undocumented transfers of funds or assets between LeDay and Kiglapait.

107. Upon information and belief, there were undocumented transfers of funds or assets between at least one of the entities identified in paragraph #16 above and Kiglapait, LTHM, and/or LeDay.

108. LTHM and Kiglapait integrated their resources to achieve a common business purpose.

109. LeDay utilized Kiglapait for his own personal purposes and benefit.

110. LeDay has and had sole control over Kiglapait.

111. LeDay utilizes LTHM for his own personal purposes and benefit.

112. LeDay has and had sole control over LTHM.

113. LeDay did not and does not separate his personal property from that of Kiglapait.

114. LeDay did not and does not separate his personal property from that of LTHM.

115. During all relevant times, Travis Owens was officially identified as the sole director of Kiglapait. Despite this fact, Owens never had and still has no control over hiring, firing, and other personnel decisions of Plaintiffs; he never had and still has no control over the operations of Kiglapait; he never had and still has no control over the assets of Kiglapait; he never has and still does not act in the best interest of Kiglapait; and he never conducted or participated in any Kiglapait board meetings.

116. Owens was not involved in the decision to terminate Plaintiffs.

117. Instead, LeDay had total control over Kiglapait and Plaintiffs' employment situation.

118. LeDay never has acted and still does not act in the best interest of Kiglapait.

119. LeDay never has acted and still does not act in the best interest of LTHM.

120. Kiglapait was merely a tool or business conduit of LeDay and LTHM.

121. LeDay and/or LTHM utilized Kiglapait to attempt to circumvent their obligations under the FLSA, ERISA, and the WARN Act.

122. LeDay is relying on the fact that Kiglapait has no liquid assets in order to justify Defendants' alleged inability to pay Plaintiffs or otherwise refusing to comply with the TWC's wage determination orders.

123. For all purposes of this lawsuit, LTHM and Kiglapait must be considered a single business enterprise.

124. For all purposes of this lawsuit, LTHM and LeDay must be considered employers of Plaintiffs. In the alternative, LTHM and LeDay must be considered the alter egos of Kiglapait.

WARN Act Violation

125. Defendants employed 100 or more full-time employees. Alternatively, Defendants employed 100 or more employees, including part-time employees, who in the aggregate worked at least 4,000 hours per week.

126. LTHM and Kiglapait are both jointly and separately a business enterprise under the WARN Act.

127. Renaissance Hospital Groves, a facility or single site of employment, was shut down on or about April 26, 2013. The shut-down resulted in an employment loss for 50 or more employees during at least a 30-day period. This is considered a plant closing, as defined under the WARN Act.

128. Alternatively, the terminations on or about April 26, 2013 affected between 50 – 499 employees and over 33 percent of LTHM's and/or Kiglapait's active workforce. This is considered a mass layoff, as defined under the WARN Act.

129. Prior to April 26, 2013, there was no notification that the Plaintiffs would be terminated or that Renaissance Hospital Groves would be shut down.

130. After the shut-down, LeDay initially indicated that the hospital was temporarily shut down to reorganize, deal with internal construction, and for purposes of changing its focus to behavioral health and senior care. He communicated this message to Groves City Manager, D.E. Sosa. However, the shut-down is apparently permanent.

131. Kiglapait and/or LTHM did not face any financial distress or unforeseeable business circumstances. In fact, after the shut-down, Defendants initially indicated it had plans to reopen the hospital. Indeed, if there were unforeseen business circumstances that led to a sudden shut-down, it would be inconceivable that LeDay would announce that it had plans to reopen.

132. Upon information and belief, to any extent Kiglapait and/or LTHM contend they did experience financial distress, such alleged distress was initiated by LeDay improperly handling monies/assets belonging to Kiglapait and/or LTHM.

133. Therefore, Defendants were obligated to provide 60 days' notice prior to the layoff, but they did not.

134. Based on the above and other allegations in this document, LeDay is liable for the WARN Act violation under the alter ego theory.

135. Therefore, all defendants are liable for the WARN Act violation. *See* 29 C.F.R. 639.3(a)(2).

ERISA Violations

136. During their employment, the Plaintiffs were provided with medical and other health benefits.

137. Many of the Plaintiffs and their beneficiaries heavily depended on these benefits. For example, Plaintiff Horn-Watson was approximately eight months pregnant when she was terminated. She lost insurance coverage immediately and had to resort to Medicaid coverage to assist with delivery and initial post-partum care. This coverage ended as of September 30, 2013.

138. Plaintiffs were not provided with a Summary Plan Description of their welfare plans.

139. Defendants failed to maintain a written plan document regarding Plaintiffs' medical and other health benefits.

140. With respect to the medical and other health benefits that covered Plaintiffs, Defendants did not file the required Form 5500 Annual Returns/Reports with the Department of Labor and/or Internal Revenue Service. Indeed, in response to a Freedom of Information Act request, the DOL confirmed this fact.

141. Defendants failed to designate a plan administrator with respect to the plan covering Plaintiffs' medical and other health benefits.

142. However, LeDay actually controlled the administration of the medical and other health benefit plan(s) that covered Plaintiffs. This fact parallels the fact that LeDay is the administrator of LTHM's medical and health benefit plan. Therefore, LeDay is either the defacto plan administrator of the plan that covered Plaintiffs or is an employer as defined by ERISA. 29 U.S.C. § 1002(5).

143. After the Plaintiffs were terminated on April 26, 2013, they became entitled to benefits under COBRA.

144. COBRA obligations extend to related organizations of an employer. Therefore, even if Kiglapait had separate distinct plan for Plaintiffs, because LTHM and/or LeDay are either related organizations of Kiglapait or are the actual employers themselves, LTHM and/or LeDay were obligated to provide COBRA notices to Plaintiffs.

145. Defendants were obligated to send a COBRA notice to Plaintiffs within 44 days of their termination. The Plaintiffs have still not received such notification.

146. Plaintiffs may have been covered under a welfare plan specifically designed for employees who physically worked at the Renaissance Hospital Groves location. This

plan may have been terminated. If so, then the employer or plan administrator of this plan was obligated to send a notice to Plaintiffs and other covered beneficiaries as provided under 29 C.F.R. 2590.606-4(c). This has not been done.

147. In addition, because LTHM is considered an employer of Plaintiffs, the Plaintiffs are entitled to participate, via COBRA, in the same welfare plans covering employees of LTHM. Neither LTHM nor LeDay sent a COBRA election notice to the Plaintiffs.

148. Under 29 U.S.C. § 1132(c)(1), Defendants are liable for up to $110 per day per beneficiary for the failure to send the COBRA election notices as well as for failure to send a COBRA unavailability notice under 29 C.F.R. 2590.606-4(c).

149. In addition to the lack of notice, the Plaintiffs' health coverage has actually been terminated without the option to participate via COBRA. Therefore, they are no longer covered under any Defendants' health care plans.

150. Plaintiffs incurred increased and unexpected medical expenses due to Defendants' failure to allow them to participate in a welfare plan via COBRA.

151. Although COBRA benefits may terminate early if an employer ceases to maintain any group health plan, that is not the case here. At a minimum, LTHM is an employer of Plaintiffs. In addition, LeDay was operating two other hospitals with several employees – St. Anthony's Hospital in Houston (LTHM) and South Hampton Community Hospital in Dallas. Therefore, Defendants were and still are obligated to provide COBRA coverage.

Breach of Contract

152. As a benefit of employment, the Plaintiffs received Paid-Time-Off ("PTO") benefits. Defendants' employee handbook explicitly states that "[e]mployees who are laid off or terminated for cause will receive accrued PTO."

153. This handbook is considered a contract that provided the Plaintiffs with terms and conditions of employment.

154. The Plaintiffs have not received compensation for their accrued PTO.

FLSA Violation

155. At all material times, Defendants have been employers within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).

156. At all material times, Defendants have been enterprises within the meaning of 3(r) of the FLSA. 29 U.S.C. § 203(r).

157. At all material times, Defendants have been enterprises in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because Defendants have had and continue to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

158. Furthermore, Defendants have annual gross business revenue of not less than $500,000.

159. In performing their duties for Defendants, the Plaintiffs were engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206 – 207.

160. The Plaintiffs were regularly paid twice a month.

161. The Plaintiffs worked from April 21 – 26, 2013; however, they were not paid any wages for the work they performed for those six days.

162. Under the FLSA, the wages for those six days were due on or before the next regularly scheduled payday. As of the date of this Complaint, the Plaintiffs have not been paid for the work performed on those six days. Therefore, Defendants failed to comply with the FLSA.

163. Under the Texas Payday Law, the Plaintiffs' final pay is due within six calendar days of their termination.

164. Several employees complained about not receiving their final pay, and even the media reported the lack of payment.

165. Defendants have not made a good faith effort to comply with the FLSA.

166. Defendants willfully violated the FLSA and/or showed reckless disregard in attempting to comply with the FLSA.

## V. CAUSES OF ACTION

167. Plaintiffs incorporate the preceding paragraphs by reference.

A. *WARN Act violation against all Defendants*

168. LTHM and/or Kiglapait failed to give Plaintiffs 60 days' notice prior to closing, as required by 29 U.S.C. § 2102(a).

169. This failure makes LTHM and/or Kiglapait liable to Plaintiffs for 60 days of pay, plus costs and attorney's fees. *See* 29 U.S.C. § 2104(a).

170. LeDay is liable for the WARN Act violation under the alter ego theory.

B. *ERISA – Breach of Fiduciary Duty under 29 U.S.C. § 1132(a)(3)*

171. Plaintiffs' medical and other health insurance benefits have been improperly terminated.

172. As plan administrator, LeDay had fiduciary duties to Plaintiffs. LeDay breached his fiduciary duties.

173. Plaintiffs accordingly assert a claim under section 502(a)(3) of ERISA to request that the Court change or reform the terms of the plan to account for LeDay's improper actions. *See CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1876 – 80 (2011); *Gearlds v. Entergy Servs.*, 709 F.3d 448, 452 (5th Cir. 2013).

C.    *ERISA – 29 U.S.C. § 1132(c)(1) against all Defendants*

174. As indicated above, all Defendants are considered "employers" of Plaintiffs under ERISA. Alternatively, LeDay is the plan administrator of the health plan that covered Plaintiffs during their employment.

175. Plaintiffs assert claims under section 502(c)(1) of ERISA to recover a penalty of $110 per day per beneficiary for LeDay's and/or LTHM's failure to send the COBRA election notice within 44 days of the cessation of their health insurance, as required by 29 U.S.C. § 1166(a)(4); 29 C.F.R. 2590.606-4.

176. In addition, if in fact the health insurance plan was terminated, Defendants failed to send a "notice of unavailability of continuation coverage" and is similarly liable for the $110 per day per beneficiary penalty. 29 C.F.R. 2590.606-4(c).

D.    *Breach of Contract against Defendant Kiglapait*

177. Plaintiffs were promised PTO benefits and that accrued PTO benefits would be paid out when they were terminated.

178. Kiglapait has not paid such PTO and has, therefore, breached its promise to provide such benefits.

179. Under the alter ego theory, LeDay is personally liable for this breach of contract claim.

E.    *Fair Labor Standards Act violation against all Defendants*

180. By failing to pay Plaintiffs for the work they performed from April 21 – 26, 2013, Defendants have violated the FLSA.

181. All Defendants are liable under the FLSA. *See* 29 U.S.C. § 203(d); *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012); *Artis v. Asberry*, 2012 U.S. Dist. LEXIS 149410, *11 – 12, c.a. no. G-10-323 (S.D. Tex. Oct. 16, 2012) (citing 29 C.F.R. 791.2(a)); *Fontenot v. Brouillette*, 2013 U.S. Dist. LEXIS 5703, *16-17, c.a. no. 4:10-cv-01053 (S.D. Tex. Jan. 15, 2013).

182. Defendants did not pay Plaintiffs the required minimum wage, their regular rate of pay, any overtime, and/or any fixed weekly salaries. Therefore, any employees that may have originally been considered exempt from the overtime requirements would actually be considered misclassified for the April 21 – 26 time period and be owed an hourly rate plus overtime.

183. Defendants are liable to Plaintiffs for unpaid wages and liquidated damages in an amount equal to their unpaid wages.

## VI. PRAYER

184. Plaintiffs respectfully request[2] that this Court:

a) require Defendants to provide Plaintiffs with written notice of the rights provided under COBRA;

b) require Defendants to reimburse Plaintiffs for medical expenses they incurred during the time period that they otherwise should have been covered by a relevant welfare plan;

---

[2] Plaintiffs are currently not seeking any direct relief from LTHM Houston – Operations, LLC because of its ongoing bankruptcy proceedings.

c) require Defendants to reimburse Plaintiffs for increased insurance premiums they have paid for medical insurance during the time period that they otherwise should have been covered by a relevant welfare plan based on COBRA coverage;

d) order Defendants to pay Plaintiffs 60 days' pay after the date of their termination;

e) order Defendants to pay $110 per day to Plaintiffs from the date notice was required of a qualifying event (or otherwise for their failure to provide COBRA notifications);

f) order Defendants to pay Plaintiffs their accrued PTO;

g) order Defendants to pay Plaintiffs their unpaid compensation, overtime pay, and liquidated damages under the FLSA;

h) order Defendants to pay to Plaintiffs any other actual, consequential, and incidental damages;

i) award Plaintiffs attorney's fees and costs;

j) award pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

k) award all such other and further relief to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

Dated: October 7, 2014

SUD LAW P.C.


_/s/ Nitin Sud_
_____

Nitin Sud
State Bar No. 24051399
Federal ID No. 611307
4545 Mount Vernon Street
Houston, TX 77006
Phone: 832-623-6420
Fax: 832-304-2552

Attorney for Plaintiffs


CERTIFICATE OF SERVICE

I certify that Plaintiffs' Third Amended Complaint was served on the following attorney in accordance with the Federal Rules of Civil Procedure on October 7, 2014:

Troy Tindal
17225 El Camino Real
Suite 190
Houston, Texas 77058
troy@tindallawfirm.com


_____/s/ Nitin Sud_____
Nitin Sud